**George J. FULTON, Plaintiff-Appellant,**

v.

**Isadore HECHT et al.,
Defendants-Appellees.**

No. 75–4122.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

Rehearing and Rehearing En Banc
Denied Feb. 14, 1977.

Jay M. Vogelson, Dallas, Tex., Norman A. Sand, Paul Siegel, Paul A. Louis, Miami, Fla., for plaintiff-appellant.

Herbert L. Nadeau, Miami, Fla., for defendants-appellees.

Before BROWN, Chief Judge, and TUTTLE and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This 54(b) certified appeal of dismissal of a 42 U.S.C.A. § 1983 action is brought by George Fulton, a greyhound breeder and racer, against the partners of West Flagler Associates, Ltd., owners and operators of Flagler Kennel Club, alleging that West Flagler refused to renew his booking contract to race his greyhound dogs at the Kennel Club. The trial court found that the Kennel Club was privately owned and financed and that the State of Florida's involvement with the dog racing industry was not sufficiently connected with West Flagler's decision to terminate Fulton's contract so as to make West Flagler's conduct attributable to the State for purposes of the Fourteenth Amendment.

Flagler Kennel Club is a wholly privately owned greyhound racing track. It is one of three dog tracks licensed by the State of Florida to engage in the business of pari-mutuel greyhound racing in Dade County.

George Fulton, a greyhound racer and breeder, was licensed by the State of Florida to race his dogs. He had raced greyhounds at Flagler Kennel Club for approximately fifteen years. His booking contract with West Flagler, to race at the Kennel Club, expired on September 4, 1972 and prior to that date, he was advised that his contract would not be renewed. On September 1, 1972, he filed suit against the partners of West Flagler Associates, Ltd. for failure to renew the contract. He claimed the contract was not renewed in retaliation for testimony he gave before the Board of Business Regulation, the state agency that allocates racing dates among the three Dade County tracks, which was adverse to West Flagler. Fulton asserts that the act of refusing to renew his contract was done under color of state law in violation of § 1983 and in deprivation of his rights under the Fourteenth Amendment. He claims state action is present in that the State regulates the dog racing industry, a symbiotic relationship exists between the State and the Kennel Club, the State has granted a monopoly to the Kennel Club and there is imprimatur by inaction due to the failure of the Board of Business Regulation to act on his complaint regarding termination of his contract.

### Procedural History

In a series of multi-claim complaints,[1] Fulton alleged West Flagler committed an unnamed tort, violated § 1983, the Fourteenth Amendment, and the Sherman Anti-Trust Act in refusing to renew his contract.

The trial court dismissed the § 1983 action finding insufficient state involvement. The tort claim was likewise dismissed and trial by jury was subsequently had on the anti-trust claim resulting in judgment against Fulton.[2]

Fulton attempts here to appeal the dismissal of the § 1983 claim and the tort claim. We accept the § 1983 appeal, finding we have jurisdiction, but we must reject the appeal of the dismissal of the tort claim. The trial judge entered a final judgment under F.R.Civ.P. 54(b) on the § 1983 claim. We find no such final judgment on the tort claim. The tort claim is not before the Court since no certificate was entered under 54(b).[3] Having jurisdiction of the § 1983 appeal, we affirm the trial court's dismissal.

### State Action

The thrust of Fulton's § 1983 claim is that West Flagler's failure to renew his contract to race his greyhounds at the Flagler Kennel Club track was done under color of state law. He also claims this refusal denied him equal protection of the laws. The Flagler Kennel Club is admittedly a private operation. As such, the proof must show significant state involvement in order to bring an otherwise private concern within the ambit of the Fourteenth Amendment. *Moose Lodge No. 107 v. Irvis*, 1972, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627; *Greco v. Orange Memorial Hospital Corp.*, 5 Cir., 1975, 513 F.2d 873, *cert. denied*, 1975, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376. *See also Burton v. Wilmington Parking Authority*, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45; *Shelley v. Kraemer*, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. The protective armor of the

---

**1.** The procedural history of this case can only be characterized as a winding maze of complaints and counts. In addition to the tort claim, anti-trust and § 1983 claim, Fulton alleged numerous other constitutional and statutory violations. However, as pointed out, *infra*, only the § 1983 claim is before us here.

**2.** Separate appeal on the anti-trust claim is pending in this Court in case number 76–2391.

**3.** We intimate no decision on whether the tort action is to be made a part of the pending anti-trust appeal in case number 76–2391. That is a decision for the panel that is hearing the anti-trust appeal. We are confident that the panel will, within proper limits, permit use of appropriate portions of this record to avoid or reduce unnecessary costs.

Fourteenth Amendment invoked under § 1983 is activated to prevent deprivation of rights secured by the Constitution and laws only when state action or action taken under color of state law is present.

We are not left to "flounder blindly" in determining if the state is significantly present on the side of alleged impermissible deprivation of a secured right. The Supreme Court has many times explored this area and exhorted words of wisdom for our guidance. While it would appear that our task has been simplified, we are reminded that "the question of whether particular . . . conduct is private, on the one hand, or . . . 'state action,' on the other hand, frequently admits of no easy answer." *Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. at 172, 92 S.Ct. at 1971. *See also Jackson v. Metropolitan Edison Co.,* 1974, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477; *Burton v. Wilmington Parking Authority, supra,* 365 U.S. at 723, 81 S.Ct. 856. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." 365 U.S. at 722, 81 S.Ct. at 860.

### The Challenged Activity

The trial court found that the State of Florida was not sufficiently connected with West Flagler's refusal to renew Fulton's booking contract so as to imbue that act with the attributes of the State.

Fulton argues that state action or action under color of state law is present in that the State of Florida regulates the dog racing industry. He claims that the State and West Flagler are partners. The State issues a permit and license for the Kennel Club to operate pari-mutuel betting—Fulton, himself, must be licensed by the State to race his dogs—state auditors audit the books of the track, the State receives revenue from the track, state veterinarians examine the racing dogs, and the State performs other functions in the industry that could be considered regulation. These factors considered, however, we are not persuaded that this regulation places the stamp of state created holiness on the Kennel Club. In *Jackson v. Metropolitan Edison Co., supra,* in speaking of public utility regulation, the Supreme Court said that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* 419 U.S. at 350, 95 S.Ct. at 453. The Court further said that even extensive or detailed regulation, by itself, would not be sufficient to tip the scales. The Court, in *Jackson,* recognized that public utilities would likely be subject to extensive regulation, but it refused to acknowledge such regulation as the single decisive factor for finding the utility to be the state itself.[4] We think the dog racing industry can be analogized to the public utility situation. Because of the very nature of the industry, it must be regulated to protect the public. Even though the regulation might be extensive, it cannot, in any *realistic sense,* make the State a partner in the endeavors of the Kennel Club.

The "symbiotic relationship" that was characterized in *Burton v. Wilmington Parking Authority, supra,* is not present here. The Kennel Club is not a lessee of public property. There is no evidence of a physical relationship. The State is not obligated to maintain and repair the Kennel Club's premises. There are certain mutual financial benefits that are derived from the operation of the track. Fulton strongly urges that the sharing of the revenue indicates a partnership. He asserts that the Florida Supreme Court case; *Wilson v. Sandstrom,* 317 So.2d 732 (Fla.1975) illustrates that partnership and the State's interest in protecting its share of the revenue.

In *Wilson,* the State of Florida intervened in a suit by West Flagler against boycotting greyhound owners to force compliance with their contracts to furnish grey-

---

4. *See also Public Utilities Commission v. Pollak,* 1952, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068.

hounds for track racing. The suit resulted in an injunction in effect requiring the dog owners to comply with their contracts to supply the dogs under the pain of contempt for non-compliance. Fulton's position is that intervention by the state to protect its share of the revenue demonstrates that there was a partnership. We do not agree. The financial benefits accruing to the State from the continued operation of the Kennel Club do not convert private conduct into state action.

We must likewise reject Fulton's claim that state action is present because, in addition to the regulation, the Kennel Club is granted a monopoly one-third of the year. Each of the three dog tracks in Dade County is allotted specific dates for racing by the Board of Business Regulation. Dates are set to minimize overlap. Therefore, on some dates, only one dog track would be in operation. Although, it is possibly more likely that we would find the acts of an extensive state regulated business—coupled "with at least something of a governmentally protected monopoly"—"to be 'state' acts than [would] the acts of an entity lacking these characteristics", we cannot let these characteristics lead us to an erroneous conclusion. *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 351, 95 S.Ct. at 453. Our inquiry must go a step further and determine if there is a "sufficiently close [connection] between the State and the challenged action . . . so that the action of the [business entity] may be fairly treated as that of the State itself." *Id. See also Moose Lodge No. 107, supra,* 407 U.S. at 176, 92 S.Ct. 1965.

The challenged activity here is the refusal to renew Fulton's booking contract to race greyhounds at Flagler Kennel Club. We fail to find that "necessary" sufficiently close connection between this act and the State so as to treat it as the act of the State. The evidence is that the State of Florida—except for the requirement that a dog racer must have a state license to run his dogs—does not regulate booking contracts between the Kennel Club and the dog owners. In fact, the State has no control over the contract. Fulton has not shown that the State either directly or indirectly participated in the decision not to renew his contract. *See Greco v. Orange Memorial Hospital Corp., supra.* There has been no showing of involvement by the State of Florida in this challenged activity.

We also agree with the trial court that failure of the Board of Business Regulation to act on Fulton's complaint regarding termination of his contract does not give rise to state action.

AFFIRMED.