408 So.2d 711 (1982)
James L. SCHREINER, Appellant,
v.
McKENZIE TANK LINES & RISK MANAGEMENT SERVICES, INC., Appellee.
No. UU-58.
District Court of Appeal of Florida, First District.
January 11, 1982.
*712 R. Larry Morris, William D. Marsh and Robert A. Emmanuel of Emmanuel, Sheppard & Condon, Pensacola, for appellant.
William H. Clark, L. Kathleen Horton, Donald A. Roark, George J. Roark and G. James Roark, III, of Roark & Roark, Pensacola, for appellees.
SHIVERS, Judge.
According to Article I, Section 2 of the Florida Constitution, "... No person shall *713 be deprived of any right because of race, religion or physical handicap."[1] This appeal presents us with three issues all relating to this clause, including: (1) Is the provision self-executing? (2) Does this provision of the Florida Constitution require "state action" as envisioned under the Fourteenth Amendment to the U.S. Constitution? and (3) If so, has there been "state action" in the controversy at bar?
Appellant and plaintiff below, James I. Schreiner, worked for appellee McKenzie Tank Lines, Inc. Appellee Risk Management, Inc., is McKenzie's insurer. In 1976, Schreiner was hired to perform repair work in McKenzie's shop and on the road. His duties included the use and control of motor vehicles on the highway. On February 20, 1978, Schreiner suffered an epileptic seizure resulting in a head injury. His driver's license was revoked by the State of Florida, and McKenzie ordered him to conduct work only in the shop.
Shortly thereafter, he suffered another seizure. His doctor informed him that he would not be able to perform any activities in which he would be off the surface of the ground. McKenzie reassigned the appellant to the tire room at which time he suffered a third seizure. McKenzie then dismissed the appellant from its employ on June 20, 1978. Schreiner filed suit based on a number of causes of action, including the constitutional issue, which is the only one which merits our attention. His complaint was dismissed by the trial court.
Schreiner contends he was unconstitutionally deprived of his employment due to a physical handicap.[2] Section 23.167, Florida Statutes (1979), presently provides an enforcement mechanism for those individuals who feel they have been wrongly deprived of their employment related rights. However, neither § 23.161, et seq., nor the enforcement provisions of its predecessor, § 13-261, Florida Statutes (1977), were in effect at the time Schreiner was dismissed.[3] *714 Therefore, any relief that he seeks hinges directly on Article I, Section 2. To provide relief, this section would have to be self-executing.
The test to determine whether or not a constitutional provision is self-executing was clearly set out by our Supreme Court in Gray v. Bryant, 125 So.2d 846 (Fla. 1960), and has been reaffirmed on numerous occasions. See, e.g., State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla. 1980); Plante v. Smathers, 372 So.2d 933 (Fla. 1979); Williams v. Smith, 360 So.2d 417 (Fla. 1978). In essence, we are directed by Gray to determine whether or not the sentence, "No person shall be deprived of any right because of race, religion or physical handicap," sufficiently delineates "a rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment." Gray, supra, at 851. In our view, this provision of the constitution is quite direct and in need of no implementing legislation.
Our view that the constitutional provision is self-executing is reinforced by Plante, supra, at 936. "A constitutional provision is to be construed in such a manner as to make it meaningful. A construction that nullifies a specific clause will not be given unless absolutely required by the context." Id. Since there were no statutory enforcement provisions in effect to provide relief between 1974, when Article I, Section 2 was amended to include the physically handicapped, and July 1, 1978, which was the effective date of the statutory protections, the only relief available would be based on the constitutional provision. A decision that the constitutional provision is not self-executing would in effect cause the provision to have been null during that period. This would negate the will of the people in approving this amendment to the constitution, and the will of the people is always the paramount consideration in determining the self-executing nature of a provision. Gray, supra, at 851.
We note in passing that the Florida Legislature has apparently adopted legislation aimed at implementing and expanding this constitutional provision in the form of §§ 23.161-23.167, Florida Statutes (Supp. 1980). This legislation is geared toward protection of individuals who have been discriminated against not only on the basis of race, religion or physical handicap but due to the additional categories of color, sex, national origin, age and marital status. See, § 23.161, Florida Statutes (1979). The existence of these implementing sections might arguably indicate that the constitutional section at bar is not self-executing. As Gray notes, such a view is fallacious. "The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing." Gray, supra, at 851, citing People v. Carroll, 3 N.Y.2d 686, 148 N.E.2d 875, 171 N.Y.S.2d 812 (1958).
It is also true that the human rights provisions, §§ 23.161-23.167, Florida Statutes (Supp. 1980), further provide for a mechanism not only to halt discrimination against the physically handicapped but for the imposition of relief in the form of back pay and recovery of reasonable attorney's fees. See, § 23.167(13), Florida Statutes (1979). Apparently no case has ever found that violation of a constitutional provision permits monetary relief merely because it is self-executing. Figueroa v. State, 61 Haw. 369, 604 P.2d 1198, 1206 (1980). Although a statute might add to or prescribe a penalty for violation of a self-executing constitutional amendment, it does not follow that the provision is not self-executing. Haile v. Foote, 90 Idaho 261, 409 P.2d 409, 412 (1965), citing 1 Cooley on Constitutional Limitations at 170.
Comparison of Article I, Section 2 of the Florida Constitution, to the Equal Protection Clause in the Fourteenth Amendment to the U.S. Constitution indicates that the two are similar. Cf., Purvis v. State, 377 So.2d 674, 676 (Fla. 1979). In fact, many states have equal protection provisions in *715 their state constitutions, although it appears only one state, Pennsylvania, has specifically determined that its equal protection provision is self-executing. See, Harley v. Schuykill County, 476 F. Supp. 191, 195 (E.D.Pa. 1979); Erdman v. Mitchell, 207 Pa. 79, 56 A. 327 (1903).[4]
While Article I, Section 2 is self-executing, the appellant's position would not be assisted if there is a state action requirement that he could not satisfy. The state action requirement has its roots in The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The U.S. Supreme Court has noted "that the action inhibited by the first section [Equal Protection Clause] of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful... ." Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1947). "Individual invasion of individual rights is not the subject-matter of the amendment... ." The Civil Rights Cases, supra, at 109 U.S. 11, 3 S.Ct. 21. See also, Burton v. Wilmington Parking Authority, 365 U.S. 715, 721-722, 81 S.Ct. 856, 859-860, 6 L.Ed.2d 45 (1961). "State action is not invoked; it is restrained. So, as shield rather than sword, does the Amendment secure to the people ... equal protection of the laws." King v. South Jersey National Bank, 66 N.J. 161, 330 A.2d 1, 8 (1974).
Whether there is a state action requirement under Article I, Section 2 of the 1968 Florida Constitution is a question that has not been directly confronted by any Florida court. Although the U.S. Supreme Court has determined that there is a state action requirement under the Fourteenth Amendment, this does not mean we are bound to accept that view as controlling in regard to a parallel provision of the Florida Constitution. "Yet such rulings have long been considered helpful and persuasive, and are obviously entitled to great weight." Pomponio v. Claridge of Pompano Condominium, 378 So.2d 774, 779 (Fla. 1979).[5]
Our review of the reported decisions reveals that in each and every instance that the Florida Equal Protection Clause has been invoked, there has been at least some state action present. However, there is no case in Florida specifically stating that there is a state action requirement under Article I, Section 2. To determine whether the framers and adopters intended a state action requirement, the sentence barring deprivation of any right due to a physical handicap must be read in pari materia and harmonized with the rest of Article I, Section 2. Advisory Opinion to Governor Request of June 29, 1979, 374 So.2d 959, 964 (Fla. 1979); Lewis v. Florida State Board of Health, 143 So.2d 867, 869 (Fla.1st DCA 1962). The first sentence specifically states that all persons "are equal before the law." This clause indicates that this section deals with the relationship between the people and the state.
This view is bolstered by Junior Football Association of Orange v. Gaudet, 546 S.W.2d 70 (Tex.Civ.App. 1976). In that case, *716 Article I, Section 3a, of the Texas Constitution, which is the Texas Equal Protection Clause, was construed to require state action to be enforceable, because that section states that "Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin... ." [emphasis added]. See also, Lincoln v. Mid-Cities Pee Wee Football Association, 576 S.W.2d 922, 924-925 (Tex.Civ.App. 1979); Zentgraf v. Texas A & M University, 492 F. Supp. 265, 272 (S.D.Tex. 1980).
Other states have adopted a similar interpretation requiring state action. In Connecticut that state's Supreme Court identified a state action requirement in the Connecticut Constitution[6] in Lockwood v. Killian, 172 Conn. 496, 375 A.2d 998, 1001-1004 (1977); see also, Schroeder v. Dayton-Hudson Corp., 448 F. Supp. 910, 915 (E.D.Mich. 1978) (Mich.Const. art. I, § 2, equal protection clause has state action requirement) and Holy Spirit Association for Unification of World Christianity v. New York State Congress of Parents and Teachers, Inc., 95 Misc.2d 548, 408 N.Y.S.2d 261, 265 (Sup.Ct. Sp.Term, 1978) (first sentence of N.Y. Const., art. I, § 11, equal protection clause requires state action). These interpretations, combined with the persuasiveness of the federal view of a state action requirement under the parallel Fourteenth Amendment to the U.S. Constitution, suggest to us that Article I, Section 2 of the 1968 Florida Constitution has a state action requirement.
In construing a constitutional provision we are required to ascertain and give effect to the intent of the framers and adopters of the constitution. Bailey v. Ponce de Leon Port Authority, 398 So.2d 812, 814 (Fla. 1981); 10 Fla.Jur.2d Constitutional Law § 22 (1979). The papers and minutes of the Constitutional Revision Commission (C.R.C.) that drafted the 1968 Florida Constitution are particularly relevant in ascertaining the intent of the framers. See Gallant v. Stephens, 358 So.2d 536, 539-540 (Fla. 1978) (Fla. Supreme Court examined C.R.C. minutes and notes to give effect to language in Art. VII, § 9(b), Fla. Const.).
Our review of the minutes of the C.R.C. meetings reveals a great deal about the manner in which the C.R.C. members envisioned that Florida's Equal Protection Clause was intended to function. Article I, Section 2 of the 1968 Constitution was made a part of the proposed constitution with no discussion of relevance to this case. However, on December 13, 1966, Amendment No. 127 was adopted which reworded the last sentence in the section to read, "No person shall be deprived of any right because of race, religion or sex."[7] 4 Convention of the Florida Constitution Revision Commission 264-265; 294-297 (Dec. 13, 1966) (unpublished transcripts available in Florida Supreme Court Law Library).
The minutes reveal that Amendment No. 127 was reconsidered, and the words "or sex" were stricken from the last sentence of the section. 5 Convention of the Florida Constitution Revision Commission 33-44 (Dec. 14, 1966). During the floor debate on reconsideration, various members discussed the fact that the section was intended to function in a manner similar to the Fourteenth Amendment to the U.S. Constitution. Id. at 33-36. Therefore, it seems apparent to us that Article I, Section 2 of the 1968 Florida Constitution, in its present form, was intended to have a "state action" requirement, and that the last sentence of the section specifically identifies three "suspect *717 classes," including race, religion and physical handicap.[8]
Assuming there is a state action requirement, we are required to determine whether there has been a demonstration of state action in this case. "[T]he question whether particular conduct is `private,' on the one hand, or `state action,' on the other, frequently admits of no easy answer." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349-350, 95 S.Ct. 449, 452-453, 42 L.Ed.2d 477 (1974). Fashioning an all encompassing rule in an effort to define what conduct constitutes state action is impossible. Each case must be weighed on its own facts. Wilmington Parking Authority, supra, at 365 U.S. 722, 81 S.Ct. 860. The U.S. Supreme Court in the Wilmington Parking Authority case explained the first of two state action theories. In that case, the existence of a symbiotic relationship between the state and private concern which in effect made them joint partners in discrimination was found to be necessary.
A second state action theory was identified in Jackson, supra, 419 U.S. at 351, 95 S.Ct. at 453, wherein it was noted that the inquiry must be whether there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the later may be fairly treated as that of the state itself.
The federal judiciary has never clarified the extent to which either the symbiotic relationship or close nexus theories must be satisfied before state action can be found to exist. Greene v. John Hopkins University, 469 F. Supp. 187, 194 (D.Md. 1979). This is most likely due to the difficulty in fashioning an all encompassing rule as previously noted. Nor is it entirely clear which of the two theories must be utilized in testing for state action.
The various federal circuits have differed greatly as to the weight to be accorded each theory. Some courts have accepted the view that the symbiotic relationship test is one having a continuing vitality. See, Foster v. Ripley, 645 F.2d 1142, 1146 (D.C. Cir.1981). At least one other court has suggested that the two theories both continue to be in vogue. Speaking for an en banc meeting of the U.S. Court of Appeals for the Third Circuit, Judge Adams suggested that, "It may be only in the absence of an inextricably-linked [symbiotic] relationship between the state and a private entity does the `close nexus' test of Jackson come into play." Braden v. University of Pittsburgh, 552 F.2d 948, 958 (3rd Cir.1977).
However, the general trend of both the U.S. Supreme Court and the U.S. Court of Appeals for the Fifth Circuit[9] would seem to favor the utilization of the close nexus approach. The more recent theory advocated by the U.S. Supreme Court is the close nexus approach, which was alluded to in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 175-179, 92 S.Ct. 1965, 1972-1974, 32 L.Ed.2d 627 (1972), and specifically identified in Jackson, supra, at 419 U.S. 351, 95 S.Ct. 453.[10] So too, the Fifth Circuit appears to be utilizing the close nexus test in analyzing state action problems. See, Sims v. Jefferson Downs, Inc., 611 F.2d 609, 611 (5th Cir.1980).
Nevertheless, whichever approach is used, we are unable to determine that either a close nexus or symbiotic relationship exists herein. The parties have not briefed this point, but we find four possible sources of state action, including: (1) the fact that Appellee Risk Management, Inc., is an insurance *718 company most likely regulated by the state under Chapter 624, et seq., Florida Statutes; (2) the fact that at the time of the alleged discrimination Appellee McKenzie Tank Lines, a trucking company, was regulated by the state under Chapter 323, Florida Statutes (now repealed); (3) the fact that appellant's driver's license, which was necessary to his road work on the job, was suspended after his first seizure; and (4) the fact that this action will be determined by a state judicial tribunal.
As for state regulation of either of the appellees pursuant to the insurance or trucking regulation statutes, we are unable to find that the factual situation at bar satisfies either the close nexus or symbiotic relationship approach. It is not enough to merely claim that extensive and detailed regulation of the private conduct exists. Jensen v. Farrell Lines, Inc., 625 F.2d 379, 387 (2d Cir.1980); cf., Jeffries v. Georgia Residential Finance Authority, 503 F. Supp. 610, 614 (N.D.Ga. 1980). Even mere acquiescence by the state in a private action requested by a regulated enterprise, when the state does not put its weight on the side of the proposed practice by ordering it, does not convert the action of the enterprise into that of the state. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978).
Fulton v. Hecht, 545 F.2d 540 (5th Cir.1977), is instructive. Fulton involved a greyhound breeder who alleged that the non-renewal of his dog racing contract at Miami's Flagler Kennel Club constituted state action resulting in an equal protection violation. The state action symbiotic relationship or close nexus was alleged on the basis that Florida regulates the dog racing industry; allocates racing days, thereby creating a monopoly; and shares in revenues gained by the Flagler Kennel Club. The court held that the combination of these three factors was insufficient to constitute a symbiotic relationship. Id. at 542.
In the case at bar any symbiotic relationship between the State of Florida and the appellees is much more distant. The state doesn't allocate anything to either appellee and does not share in their profits. Only state regulation of appellees is present, and regulation standing alone does not constitute a symbiotic relationship. Jensen, supra.
Similarly, in Fulton, it was not shown that the state directly or indirectly participated in the decision not to renew the dog racing contract. Therefore, there was not a nexus between the state and the alleged discriminatory activity. Id. at 543. Because it was not shown that the state directly or indirectly participated in the decision to dismiss the appellant from his job, there is no nexus in the case at bar between the state and any alleged discrimination by the appellees.
Even revocation of the appellant's driver's license does not provide the necessary nexus between state action and the discrimination alleged. Schreiner's license revocation came after his first seizure, but he was kept on the job until two more seizures occurred. Any connection between the license revocation and the appellant's dismissal from his job became so attenuated by the passage of time until appellant suffered two more seizures and was dismissed as to negate any inference of a nexus between the two. No nexus has been shown in this case by the appellant, who bears the burden of clearly showing any discrimination. Lewis v. Mathis, 345 So.2d 1066 (Fla. 1977).
Similarly, the fourth source of state action, judicial state action, does not assist the appellant. Although the appellant has sought resolution of his grievance in a state court, neither his actions in doing so nor a court's rulings constitute the requisite state action. It is clear that "the mere availability of a forum for the resolution of private conflicts does not clothe private litigants with the authority of state." Henry v. First National Bank of Clarksdale, 595 F.2d 291, 296 (5th Cir.1979), cert. denied, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). "To say that an open courthouse door constitutes `state action' is to demean the judicial process." Girard v. 94th Street *719 and Fifth Avenue Corp., 396 F. Supp. 450, 455 (S.D.N.Y. 1975), affm'd., 530 F.2d 66 (2d Cir.1976), cert. denied, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798. By stating that an open courthouse door constitutes "state action," it is assumed "that the party whose private suit is challenged as `state action' already has the court on his side before the adjudicatory process even commences." Henry v. First National Bank of Clarksdale, 444 F.2d 1300, 1310 (5th Cir.1971), cert. denied, 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 (1972), reh. denied, 406 U.S. 963, 92 S.Ct. 2057, 32 L.Ed.2d 351.
It has been held that "the forbidden discrimination need not originate with the state if it is state action that enforces privately originated discrimination." Moose Lodge, supra, at 407 U.S. 172, 92 S.Ct. 1971; Shelley v. Kraemer, supra. In Shelley, two blacks purchased a parcel of land. Unknown to them was the fact that the land was the subject of a restrictive covenant barring sale of the property to blacks. The Kraemers asked the Supreme Court to enforce the racially restrictive covenant, but the Court refused, finding an equal protection violation based on race. The state action in this case hinged on the fact that the state court had enforced a racially restrictive agreement.
While Shelley, supra, has set up a very general rule for the proposition that judicial enforcement of private rights may, at least in some instances, involve state action, the "contours" and reach of Shelley remain undefined. Edwards v. Habib, 130 App.D.C. 126, 397 F.2d 687, 691 (D.C. Cir.1968), cert. denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). The reason that the reach of Shelley is so unclear rests in great part on the scarcity of case law. Note, State Action: Theories for Applying Constitutional Restriction to Private Activities, 74 Colum.L.Rev. 655, 677 (1974).
However, it appears that there are basically two types of cases in which state action based solely on the determinations of a state judicial tribunal has been found. The first type of case involves the judicial enforcement of a discriminatory statute. See, Parks v. "Mr. Ford", 556 F.2d 132, 135-136, n. 6a (3rd Cir.1977). The second type of case involves cases in which a state court is called upon to enforce the actions of private individuals permitted but not compelled by law. Shelley, supra. Because the instant case does not involve enforcement of a statute but does involve a case of a private company seeking enforcement of its actions permitted but not compelled by law, this case is obviously similar to the second type of judicial state action.
To be sure, some courts have indicated that judicial state action of the second type may only result in cases of racial discrimination. See, "Mr. Ford", supra, at 136, n. 6a; SMI Industries, Inc. v. Lanard & Axilbund, Inc., 481 F. Supp. 459, 461-463, n. 5 (E.D.Pa. 1979). However, we reject that conclusion based on Franklin v. White Egret Condominium, Inc., 358 So.2d 1084 (Fla. 4th DCA 1977).[11] The case is strikingly similar to Shelley, but rather than a racially restrictive covenant, a covenant for age restriction was involved. Franklin received an interest in a Fort Lauderdale condominium which prohibited residency by children under age twelve. The prohibition was in a covenant in White Egret's Declaration of Condominium. White Egret sued to force Franklin to transfer his interest, because he violated the covenant. The Fourth District Court of Appeal, on a petition for rehearing, specifically stated that when White Egret attempted to invoke the trial court's powers to force a reconveyance, that "it invoked the sovereign powers of the state to legitimize the restrictive covenant at issue." Id. at 1089.
The distinguishing point of this type of judicial state action does not lie so much in discrimination based on age. Rather, the factor underlying not only White Egret but *720 other discrimination cases involving judicial state action seems to rest on the fact that the use of the power of the judiciary to compel or legitimize private actions is really state encouragement of forbidden discrimination. A number of commentators and courts have suggested this to be the case. See, Habib, supra, at 692, n. 11. It also appears to be the view in one of the latest state action determinations by the U.S. Supreme Court in Flagg Brothers, supra.
In Flagg Brothers, the Court considered a New York statute that permitted a bailee to enforce a lien on goods entrusted to him, if storage charges on the goods were not paid by the bailor. After finding that there was no state action under the statute in question, the Court reviewed the possibility that a denial of state judicial relief to the bailee for return of his goods or compensation might result in state action.
A judicial decision to deny relief would be no less an "authorization" or "encouragement" of that sale than the legislature's decision embodied in this statute... . If the mere denial of judicial relief is considered sufficient encouragement to make the State responsible for those private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies relief sought by the putative property owner.
Flagg Brothers, supra, at 436 U.S. 149, 165, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185 [emphasis added].
The Fifth Circuit Court of Appeals has described to what level state judicial action must rise to become state action. In Henry v. First National Bank of Clarksdale, supra, at 444 F.2d 1300, 1310, it was stated that, "Only after both parties to a private civil action here had their day in court and the court has reached its decision and rendered its judgment does the full power of the state come into play in enforcing the judgment."
This view comports with the Shelley, Flagg Brothers, and White Egret decisions, because at this point the judicial decision may be characterized as actively encouraging discrimination. In Shelley and White Egret, a decision was sought to force the Shelleys and the Franklins to move from their homes. If the courts had agreed to such an order, it would have been used offensively to force compliance. In Flagg Brothers, as in the case at bar, the court refused to act. See, Flagg Brothers, supra, at 436 U.S. 149, 165, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185. Considering the totality of the circumstances in this case, it can fairly be stated that state judicial action was not a significant contributing factor in the appellant's loss of work. The decision in this case neither enforced nor encouraged the act of dismissing the appellant from the appellee's employ.
We acknowledge the fact that this opinion could be criticized as fostering discrimination by not acting to find an unconstitutional discrimination. Arguably, state judicial inaction could be viewed as state action. That argument deserves consideration in another case with a stronger factual setting where it can be demonstrated that state judicial inaction is truly the foundation or significant contributing factor that encourages discrimination.
However, to view the facts herein in such a manner has the effect of taking Shelley to its logical end by causing any state court decision to act or decline to act to be classified as state action. Such a step, indeed a leap, would cause the concept of state action to become a nullity. It would obliterate the line between private and state actions. "Mr. Ford", supra, at 162 (Hunter, J., concurring); Fallis v. Dunbar, 386 F. Supp. 1117, 1121 (N.D.Ohio 1974), affm'd., 532 F.2d 1061 (6th Cir.1976). We have no doubt that such a situation would be contrary to the intent of the framers and adopters of both the U.S. and Florida Constitutions.
Therefore, because this case does not involve state action, the trial court decision dismissing appellant's complaint is AFFIRMED. However, because the issue of state action is one of great public importance, we certify the following question to the Florida Supreme Court pursuant to Article V, Section 3(b)4, Florida Constitution:

*721 IS THERE A REQUIREMENT OF STATE ACTION, SIMILAR TO THAT OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, THAT MUST BE FOUND TO EXIST PRIOR TO INVOKING ONE'S RIGHT TO SEEK RELIEF UNDER THE FLORIDA CONSTITUTION OF 1968, ARTICLE I, SECTION 2?
ERVIN and LARRY G. SMITH, JJ., concur.
NOTES
[1] Two other states have constitutional provisions protecting handicapped individuals. The sections are set out below as they appear in the Louisiana and Illinois Constitutions.

La.Const. art. I, § 3 (1974).
No person shall be denied the equal protection of the law. No law shall discriminate against a person because of race or religious ideas, beliefs or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
The Louisiana Constitution has two sections. "In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition." La.Const. art. I, § 12 (1974). The second section states, "All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer." Ill. Const. art. I, § 19 (1970).
[2] Whether or not epilepsy is a "physical handicap" within the scope of Article I, Section 2 of the Florida Constitution, is a question not ruled upon by the trial judge nor briefed by the parties. At least one court has stated that whether one is handicapped in the instance of particular employment turns on the character of the disability in relation to the requirements of the job. Advocates for Handicapped v. Sears, Roebuck & Co., 24 Ill.Dec. 272, 67 Ill. App.3d 512, 385 N.E.2d 39 (1978), cert. denied, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). For a further explanation, see Carson, What Public Employers Should Know About Laws Protecting the Handicapped From Hiring Discrimination, 55 Fla.B.J. 723, 724-725 (1981).

"Epilepsy" is a medical term for brain disease occurring in paroxysms at uncertain intervals. Hall v. State, 248 Ala. 33, 26 So.2d 566, 569 (1946). It is characterized by seizures, convulsions or a temporary loss of consciousness. People v. Martin, 69 Ill. App.2d 12, 216 N.E.2d 170, 172 (1966); see also, People v. Thompson, 3 Ill. App.3d 684, 278 N.E.2d 1, 4 (1972). Whether epilepsy is a "physical handicap" is an issue we do not reach. For the purposes of this appeal, we shall assume epilepsy is a physical handicap within the scope of the Florida Constitution.
[3] Count III of Schreiner's complaint was voluntarily dismissed, and therefore, it does not play a role in our decision today. Schreiner alleged therein that he was not permitted by McKenzie Tank Lines to reapply for his job due to his handicapped condition. This situation occurred after the enforcement provisions of § 23.161, Florida Statutes, et seq., became effective.
[4] Article I, Section 1, of the Pennsylvania Constitution, states that: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."
[5] Courts have differed in their approach to the interpretations to be accorded to state constitutional clauses parallel to the Fourteenth Amendment. For example, Connecticut's view is that Article I, Section 1 of the Connecticut Constitution and the Fourteenth Amendment are of the same meaning and create similar limitations. State v. Anonymous (1972-1), 29 Conn. Supp. 333, 287 A.2d 111 (1972).

Indiana's view is that rulings under the Fourteenth Amendment are only persuasive as to rulings on parallel provisions of the Indiana Constitution. Dept. of Insurance v. Schoonover, 225 Ind. 187, 72 N.E.2d 747 (1947); see also, Bulova Watch Co. v. Brand Distributors of North Wilkesboro, Inc., 285 N.C. 467, 206 S.E.2d 141 (1974) (similar view in North Carolina). Alaska's Supreme Court has stated that it is under a duty to provide greater protection under Article I, Section 1 of the Alaska Constitution than would be available under the parallel federal provision. Breese v. Smith, 501 P.2d 159, 167 n. 30 (Alaska 1972).
[6] The Connecticut Constitution states that:

"No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex." Art. I, § 20, Conn.Const.
[7] It will be recalled that "physical handicap" was not added to this sentence until 1974. Although not added to Article I, Section 2, until that date, there is no evidence to indicate that any change was intended in the interplay between the first and second sentences of the section. The second sentence specifically names certain suspect classes.
[8] Our opinion does not reach the issue of whether there are other unspecified suspect classes or fundamental interests applicable to Article I, Section 2.
[9] While we rely heavily in this opinion on constitutional precedent from the U.S. Court of Appeals for the Fifth Circuit, we recognize that Florida is now in the eleventh circuit effective October 1, 1981. However, in a recent opinion of the eleventh circuit that court announced that it would be guided by fifth circuit precedent until altered by an en banc hearing of the eleventh circuit. See Bonner v. City of Pritchard, Alabama, 661 F.2d 1206 at 1207, 1208-1209 (11th Cir.1981).
[10] Although Jackson relied on the close nexus approach, we acknowledge the fact that the Court did not recede from or overrule the symbiotic relationship test.
[11] In an opinion by the Florida Supreme Court in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979), reh. denied (1980), the results reached by the Fourth District Court of Appeal were affirmed, but the Court did not mention the state action discussion in the District Court's opinion.