418 So.2d 1087 (1982)
Russell Leon WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. AI-362.
District Court of Appeal of Florida, First District.
August 5, 1982.
Rehearing Denied September 20, 1982.
*1088 Michael E. Allen, Public Defender and Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
ERVIN, Judge.
In affirming the denial of appellant's motion to suppress evidence of a crime, we follow federal precedent, as we believe that the facts here involved require the application of the same test for the existence of probable cause under the Florida Constitution as is the test under the United States Constitution.
On the afternoon of May 5, 1981, Duval County Sheriff's Office Detective Harold Lee received an anonymous tip that a tall, dark-skinned black male was selling heroin and/or cocaine on the corner of Fourth and Davis streets in Jacksonville. Lee, a vice squad detective, was well acquainted with this area of town, since he had previously made a number of arrests for drugs in the neighborhood. Dressed in plain clothes and driving an unmarked car, he went to the intersection and placed it under surveillance.
The tipster's broad, non-descript explanation of the drug pusher's physical features was instantly satisfied by a number of individuals on the corner, but Lee's attention was immediately drawn to appellant, who, admittedly, did not fit the description. The appellant was surveilled for ten to fifteen minutes during which time he repeated the following suspicious pantomime no less than four times: Upon an individual's approach to the appellant, the latter would turn his back from the intersection and toward a building. Turning back around toward the intersection, appellant would engage in some form of hand contact, as if to pass something, although Lee candidly stated that he was unable to ascertain whether anything was passed. After a brief encounter, the approaching individual would then depart.
The detective's past experience with drug surveillance suggested to him that drug sales were being consummated. This was confirmed in his mind when he observed a known drug addict engage in this process with appellant. Lee decided to contact appellant. He summoned a marked patrol unit for assistance, rode closer to the intersection, and, as he got out of the car, observed appellant walking away. Simultaneously, Lee shouted, ordering appellant to stop, but the latter continued his withdrawal. Lee repeated his demand, identifying himself as the "police." When he heard *1089 Lee's voice after the second summons, appellant stopped and turned. Since there were a number of people on the corner, appellant later testified that he was not really sure who was being hailed.
At that point, Detective Lee grabbed at an object concealed in the crotch area of appellant's trousers, and extracted from it a container similar to the type customarily used for carrying film. Lee opened its top and spied within a number of small wrapped tin foil packets. Based upon his experience in the narcotics field, he was sure that the packets contained heroin. Appellant was immediately arrested. Upon returning to his office, Lee opened the packets and found small quantities of a substance later determined in fact to be heroin.
On appeal, the initial stop and the opening of the film canister are contested. Appellant expressly concedes that the effort at extricating what Detective Lee believed to be a weapon was permissible, assuming the initial stop to be proper. See Bentley v. State, 411 So.2d 1361 (Fla. 5th DCA 1982); Phillips v. State, 360 So.2d 1310 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1372 (Fla. 1979).
With regard to the initial stop, we note that there are three-tiers of police-citizen encounters, including: (1) "communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment,"[1] (2) "brief `seizures' that must be supported by reasonable suspicion," and (3) "full-scale arrests that must be supported by probable cause." United States v. Berry, 670 F.2d 583, 591 (5th Cir.1982).[2] Arguably the facts before us suggest that the activity involved in hailing appellant constituted no more than an activity falling within the gamut of the first-tier as noted in Berry. This is an issue we need not confront because in light of the officer's training and experience, the facts clearly demonstrate at the minimum a reasonable suspicion to stop appellant, which is all that is required. Codie v. State, 406 So.2d 117, 119 (Fla. 2d DCA 1981).
The appellant has suggested that a founded or reasonable suspicion to stop can neither be based on the tipster's anonymous call to Detective Lee, nor on the street surveillance that Lee conducted. Although the information provided in the tip fails to carry the indicia of reliability or specificity required by State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), affm'd., 387 So.2d 963 (Fla. 1980), when it is combined with the observations made by Detective Lee, all the circumstances before him unquestionably furnished him a founded suspicion to stop. Those additional factors include time, location, physical appearance of the suspect, his behavior, and anything incongruous or unusual in the situation suggesting an illegal activity. Cf. Codie, supra, at 117; State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). More specifically, the consideration of Lee's heightened awareness stemming from the tip, his experience in drug arrests, the location of the intersection as being in an area wherein he has made a number of *1090 previous drug-related arrests,[3] the appellant's behavior and the unusual nature of Lee's observations, all demonstrate a reasonable suspicion to stop. While we have no difficulty in affirming the lower court's determination that the stop was reasonable, the question of whether we should approve the canister search is a far more complicated one to resolve.
Appellant argues that once the object had been removed and determined to be a film canister, it was then obvious to Officer Lee that the canister could not have contained a weapon; hence there was no further right to search. This is so, appellant states, because a full-scale search cannot be conducted incident to a brief seizure or stop without probable cause. Berry, supra, at 591.
Probable cause, of course, includes the knowledge of such facts and circumstances that rise to a level which would warrant an individual of reasonable caution in believing that an offense has been or is being committed. Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). "The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based." Shriner v. State, 386 So.2d 525, 528 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981). Moreover, probable cause must be determined in light of an officer's practical experience. State v. Lynch, 378 So.2d 829 (Fla. 2d DCA 1979).
Our research has failed to uncover any decision from an appellate tribunal in Florida that is dispositive of the case at bar as to the presence or lack of probable cause or of an applicable exception to the warrant requirement. However, case law from the United States Court of Appeals for the Eleventh Circuit, within which Florida is located, persuades us that affirmance of the lower court's denial of appellant's motion to suppress is required.
In United States v. Elsoffer, 671 F.2d 1294 (11th Cir.1982), the court was confronted with a case in which Elsoffer was detained by two federal agents after debarking from a plane at the Atlanta airport. Elsoffer had long hair and full beard and was dressed in faded dungarees. The officers observed also a bulge in the shape of a large sized softbound book in the front of his pants from waistline to crotch. After he was stopped, he gave the agents a false name, presented them with an airline ticket with a false name on it, and acted somewhat evasively and nervously. He carried little luggage but claimed to have been on a visit to a friend for three weeks, which the agent found "odd." Id. at 1295-1296.
The agent asked Elsoffer to consent to a search of his luggage in a nearby lounge which resulted in one of the agents searching Elsoffer and removing the bulge which consisted of a packet of cocaine. The Elsoffer court did not ground its decision upon the theory of consent, but instead determined that this warrantless search was permissible as a search incident to arrest and that Elsoffer was effectively under arrest at the time that he was taken to the lounge.
In deciding whether there was probable cause to arrest, the court stated:
The magistrate and the government listed several characteristics, most of which were entirely innocuous, that they thought would provide probable cause. We need not consider those factors. In this case the unusual size and shape of the bulge and, given its unusual size and shape, its abnormal position on Elsoffer's person alone provided not only reasonable suspicion but probable cause for Elsoffer's arrest.
Elsoffer, supra, at 1298-1299 (footnotes omitted) (e.s.). Consequently, probable cause was based only on the size, shape, and location of the bulge. Id. at 1299 n. 10. Given the overwhelming similarities of Elsoffer to the case at bar and the suspicious activities observed by Lee prior to the initial *1091 stop of appellant, we feel that Elsoffer furnishes strong precedent requiring our affirmance.
Three points are worth noting in this case. First, it was not the discovery of the heroin after the search of the canister which furnished probable cause to arrest. It was, as pointed out above, rather both the size, shape and position of the "baseball-like" bulge within appellant's trousers, as well as the officer's observations of suspicious circumstances leading up to the arrest.
Second, the search in this case took place after probable cause to arrest existed but before a formal arrest occurred. As noted by the U.S. Supreme Court in Rawlings v. Kentucky, 448 U.S. 98, 110-111, 100 S.Ct. 2556, 2564-2565, 65 L.Ed.2d 633 (1980), it is unimportant that a search precede formal arrest, because a search incident to arrest may precede formal arrest so long as: (1) probable cause to arrest existed absent the result of the search, and (2) the arrest followed "on the heels of the challenged search." Id.; Accord, State v. Emery, 411 So.2d 341 (Fla. 4th DCA 1982); State v. King, 405 So.2d 770, 773 (Fla. 5th DCA 1981).
The third point relates to the fact that the container was small, could not have contained a weapon according to Detective Lee, and could have been held by Lee until securing a warrant. We realize that there is authority to suggest that a warrant to search the canister was required even though the search was incident to a lawful arrest, because the container could have been held until such time as a warrant could have been obtained. This point was raised in Miller v. State, 403 So.2d 1307 (Fla. 1981) and State v. Parker, 399 So.2d 24, 29 (Fla. 3d DCA 1981), suggesting that the search incident to arrest exception to the warrant requirement permits a warrantless search only to prevent an assault on the arresting officers or to prevent the destruction of evidence.[4] It has not been contended that either of these situations was present in this case. However, several recent opinions of the United States Supreme Court imply that there is no constitutional impediment to the warrantless search of the film canister.
In New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), reh. denied, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036, the Court discussed the parameters of a search of a container incident to arrest. The search of any closed or open container within reach of an arrestee was permitted, "since the justification for the search is not that the arrestee has no privacy interest in the container but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." Thus, the justification for the search no longer focuses on efforts to prevent an assault or destruction of evidence. Rather, the sole justification is based purely upon the probable cause to arrest.
This view is reinforced by the Belton court's reference to the earlier case of United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1972), wherein a crumpled cigarette package was seized during a lawful arrest. A search was conducted based upon the need to disarm the arrestee and to discover evidence. Belton, supra, at 453 U.S. at 460-61, 101 S.Ct. at 2864, 69 L.Ed.2d at 775, citing Robinson, supra, at 414 U.S. at 235, 94 S.Ct. at 476. Because we have relied so heavily on federal precedent in an area not specifically addressed by Florida authority, we consider particularly instructive the exercise of examining the relationship between federal and Florida rulings dealing with a citizen's constitutional rights, especially in reference to searches and seizures.
In essence, federal courts are the final word on federal constitutional law. 36 C.J.S. Federal Courts § 186 (1960). Conversely, it is well established that a state *1092 court, when construing a provision of a state constitution, is not bound to follow controlling federal precedent in regard to a parallel provision of the U.S. Constitution. Schreiner v. McKenzie Tank Lines, 408 So.2d 711, 715 (Fla. 1st DCA 1982), certified question docketed, no. 61,697 (Fla., February 11, 1982).[5] By adopting a different interpretation placed upon a parallel constitutional provision, the state is effectuating a standard which affords its citizens greater constitutional protections than the basic or fundamental requirements expressed in the U.S. Constitution. People v. Hoshowski, 108 Mich. App. 321, 310 N.W.2d 228, 230, n. 3 (1981). As expressed by Justice Stanley Mosk of the California Supreme Court:
It is a fiction too long accepted that provisions in state constitutions textually identical to the Bill of Rights were intended to mirror their federal counterparts. The history is otherwise: the Bill of Rights was based upon the corresponding provisions of the first state constitutions, rather than the reverse.
People v. Brisendine, 13 Cal.3d 528, 119 Cal. Rptr. 315, 339, 531 P.2d 1099, 1113 (1975).
This outlook is fully applicable to the stance the United States Supreme Court or any federal court will take in reviewing a case requiring construction and application of a state constitutional provision. Thus, federal courts will always look to a state court's interpretation of a particular state's constitution. Reitman v. Mulkey, 387 U.S. 369, 373-374, 87 S.Ct. 1627, 1629-1630, 18 L.Ed.2d 830 (1967). This is true even if there are parallel state and federal constitutional provisions that are similar, but with divergent interpretations. See State v. Schmid, 84 N.J. 535, 423 A.2d 615, 626, n. 8 (1980), cert. dismissed, ___ U.S. ___, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982); 36 C.J.S. Federal Courts, § 171, nn. 21, 24 (1960). Principles of federalism demand federal court deference to a state court's construction of its own constitution. Hunt v. Roth, 648 F.2d 1148, 1155 (8th Cir.1981).
Of course, this is not to suggest that federal interpretations of the United States Constitution are not to be considered as highly persuasive and accorded great weight in construing a provision of a state constitution. Schreiner, supra, at 715. In Schreiner, we adhered to federal determinations with regard to a state action requirement in our state Equal Protection Clause. Art. I, § 2, Fla. Const. However, our acceptance of the trail blazed by the federal judiciary in this matter was based on the intent of the framers of our constitution, as noted in the minutes of the Constitutional Revision Commission. Schreiner, supra, at 716.
To be sure, courts are also swayed in construing state constitutional provisions by the similarity between federal and state documents in wording. The Hawaii Supreme Court recently counseled against ignoring federal interpretations in cases where the language of federal and state documents intersect, lest the wisdom of United States Supreme Court interpretations be lost. State v. Miyasaki, 62 Haw. 269, 614 P.2d 915 (1980). This view has not fallen on deaf ears, because our Florida Supreme Court was attracted to the logic of United States Supreme Court precedent in interpreting the constitutional provision dealing with the impairment of contractual obligation provision in the Florida Constitution. The Florida court adopted the United States Supreme Court interpretations of the parallel federal provision, because of the reason and logic supporting those interpretations. See Pomponio v. Claridge of Pompano Condominium, 378 So.2d 774, 779-780 (Fla. 1980). Similarly here, comparison of the federal constitutional provision[6] with *1093 its Florida counterpart[7] suggests great similarity in the language, although the Florida provision does include an exclusionary provision and specifically subjects the interception of private communications to the warrant requirement.[8]
There can be little doubt that Florida courts have afforded greater protection to Florida's citizenry with regard to the dissimilar clauses. For example, the probable cause requirement of the Fourth Amendment has been held not to bar warrantless interception of communications in the home, but the Florida provision has been so interpreted. State v. Sarmiento, 397 So.2d 643 (Fla. 1981). The state exclusionary provision also has been found to apply regardless of whether evidence has been obtained in violation of the Fourth Amendment. Odom v. State, 403 So.2d 936, 940 (Fla. 1981), cert. denied, ___ U.S. ___, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).[9]
*1094 The question confronting us, however, deals with different clauses of Article I, Section 12. Does Florida utilize a more restrictive standard of probable cause than is required under the Fourth Amendment, thereby requiring a stronger or higher degree of evidence to suggest that a crime has been or is being committed? We find that it does not, and that the federal and state probable cause standards are in effect mirror images of one another. Our court in Houston v. State, 113 So.2d 582 (Fla. 1st DCA 1959), examined the provision for searches and seizures in the then applicable 1885 Constitution. Art. I, § 22, Fla. Const. (1885). We found:
The 4th Amendment to the Constitution of the United States, and Section 22 of the Bill of Rights of the Florida Constitution are the same in meaning and identical in wording. For this reason the ruling of the United States Courts on unreasonable searches is generally accepted as authority for a similar ruling in Florida.
Id. at 584-585. Insofar as the wording applicable to the probable cause standard is concerned, we detect no difference between the 1885 and 1968 Florida Constitutions. "It is generally presumed that the construction of an old constitution continues to be applicable to a new one if the language is the same... ." Swartz v. State, 316 So.2d 618, 621 (Fla. 1st DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976). Consequently, precedent of this court suggests that the existing standard for review is no different than the existing standard under the Fourth Amendment.
That we are correct in asserting the continuing vitality of the view taken in Houston is fully supported by opinions from every district court of appeal, save only the fourth, which does not appear to have addressed the issue. See, e.g., State v. Tsavaris, 382 So.2d 56, 68 (Fla. 2d DCA 1980), affm'd., 394 So.2d 418 (Fla. 1981); Mata v. State, 380 So.2d 1157, 1159 (Fla. 3d DCA 1980), rev. denied, 389 So.2d 1112 (Fla.); Ulesky v. State, 379 So.2d 121, 124, n. 1 (Fla. 5th DCA 1979); State v. Hetland, 366 So.2d 831, 836 (Fla. 2d DCA 1979), affm'd., 387 So.2d 963 (Fla. 1980). Further, this view was apparently approved by our Supreme Court in Hetland, supra, at 963, wherein the court specifically adopted the district court opinion as its own.
Therefore, it is clear that the interpretations of a portion of a state constitutional section  in this case the probable cause requirements  can be conformed to federal interpretations of the parallel federal constitutional provision. Conversely, a state court may expand the protections of other portions of the same state constitutional provision over and above the rights afforded by the federal document. This is the situation with our state's constitutional search and seizure provision. In the present case, federal case law from both the United States Supreme Court and the Court of Appeals for the Eleventh Circuit provides irresistible precedent.
Since the Florida probable cause standard is the federal standard, as applied to the facts before us, we follow United States v. Elsoffer, supra, and AFFIRM the denial of appellant's motion to suppress.
Judgment and sentence AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and SHAW, J., concur.
NOTES
[1] In an authoritative opinion by the U.S. Court of Appeals for the District of Columbia, a court generally regarded as somewhat of a trend-setter, this concept is explained and referred to as a "contact." Gomez v. Turner, 672 F.2d 134 (D.C. Cir.1982); see also McClain v. State, 408 So.2d 721, 722 (Fla. 1st DCA 1982) (referring to this concept as an "encounter"); Schlanger v. State, 397 So.2d 1028, 1029 (Fla. 3d DCA 1981), rev. denied, 407 So.2d 1105 (Fla.) ("cooperative encounter"); Login v. State, 394 So.2d 183, 187 (Fla. 3d DCA 1981) ("encounter"); and State v. Rawlings, 391 So.2d 269, 270 (Fla. 4th DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981) ("temporary encounter"). Whatever the name appended to this genre of police-citizen contact, all of the foregoing cases agree that the Fourth Amendment is inapplicable.
[2] Although Berry was filed in March, 1982, the case was an en banc decision of the members of the former U.S. Court of Appeals for the Fifth Circuit. As such the opinion has continuing precedential value in the new Eleventh Circuit. See Schreiner v. McKenzie Tank Lines, 408 So.2d 711, 717, n. 9 (Fla. 1st DCA 1982), certified question docketed, no. 61,697 (Fla., February 11, 1982).
[3] That the area was known to the officer as one in which there was a high rate of drug related arrests is one factor properly considered in determining a reasonable suspicion. Cf. Wigfall v. State, 323 So.2d 587, 589-590 (Fla. 3d DCA 1975).
[4] The Miller and Parker courts relied on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), as authority for this view.
[5] Pomponio v. Claridge of Pompano Condominium, 378 So.2d 774, 779 (Fla. 1980); Miami Home Milk Producers Ass'n. v. Milk Control Board, 124 Fla. 797, 169 So. 541, 544 (1936); cf. Cantrell v. State, 405 So.2d 986, 990 (Fla. 1st DCA 1981); Stipp v. State, 371 So.2d 712, 714 (Fla. 4th DCA 1979).
[6] The Fourth Amendment to the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[7] Article I, Section 12 of the 1968 Florida Constitution states:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall issue except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of the evidence to be obtained. Articles or information obtained in violation of this right shall not be deemed admissible.
[8] Additionally, the Florida Constitution requires that a warrant shall not be issued unless "supported by affidavit," whereas the U.S. Constitution merely requires that the warrant shall be "supported by oath or affirmation." This differentiation in terminology has been interpreted to mean that warrant determinations may only be reached by review of the four corners of an affidavit. Swartz v. State, 316 So.2d 618 (Fla. 1st DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976).
[9] The scope of the Florida exclusionary clause seems to be somewhat unclear. However, recent case law suggests that the scope of the fourth amendment exclusionary rule and the constitutionally expressed provision in Florida are not coterminous. In Odom, supra, at 940, evidence was suppressed based on the Florida rule "regardless of the scope of the Fourth Amendment exclusionary rule."

There is federal authority recognizing a "good faith" exception to the exclusionary rule, which would represent a partial "retreat" from the rule. At least one federal court has been inclined to engage in this retreat, United States v. Williams, 622 F.2d 830 (5th Cir.1980) (en banc), cert. denied, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). In Taylor v. Alabama, ___ U.S. ___, ___, 102 S.Ct. 2664, 2669, 73 L.Ed.2d 314 (1982), however, the U.S. Supreme Court refused, apparently based on the facts, to recognize the type of good faith exception envisioned by Williams. Despite language to the contrary in Taylor, supra, ___ U.S. at ___, 102 S.Ct. at 2669, it is clear that the U.S. Supreme Court has accepted at least one form of the good faith exception. See Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Further, the court may have another opportunity to confront the good faith exception issue. See California v. Riegler, 50 U.S.L.W. 3860 & 3952 (U.S. pet. for cert. filed April 13, 1982) (No. 81-1916).
Regardless of the state of the federal judiciary's acceptance or rejection of a good faith exception to the exclusionary rule, Florida currently does not recognize it. Lovett v. State, 403 So.2d 1079 (Fla. 1st DCA 1981); Walden v. State, 397 So.2d 368 (Fla. 1st DCA 1981). See Ball, Criminal Law  Good Faith and the Fourth Amendment: The "Reasonable" Exception To The Exclusionary Rule, 69 J. Crim. L. & Criminology 635 (1978); Note, Criminal Law: Exclusionary Rule, United States v. Williams, 5 Nova L.J. 131 (1980).
We note that the Florida position regarding a good faith exception may be subject to change, because the legislature has passed an amendment to the state constitutional search and seizure provision subject to ratification by the electorate in November, 1982. See 8th Spec. Sess., Journal of the House of Representatives 4-5 (1982); 8th Spec. Sess., Journal of the Senate 21 (1982). The proposed amended section states:
Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures; and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
Art. I, § 12, Fla. Const.