405 So.2d 770 (1981)
STATE of Florida, Appellant,
v.
Michael Anthony KING, Appellee.
No. 81-313.
District Court of Appeal of Florida, Fifth District.
November 11, 1981.
*771 Jim Smith, Atty. Gen., Tallahassee, and Barbara Ann Butler, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, and Julianne Piggotte McLarty, Asst. Public Defender, Daytona Beach, for appellee.
COBB, Judge.
The state appeals the trial court's granting of a motion to suppress several items of tangible evidence. The operative facts follow.
On the evening of September 6, 1980, a Holly Hill police officer, James Morgan, was directed by radio to report to the Daytona Beach General Hospital. His testimony in this regard, as elicited by the direct examination of the prosecutor at the suppression hearing, was:
Q. While responding to a traffic accident, did you receive a call to go to Daytona General Hospital?
A. Yes, I did.
Q. When you arrived there, what did you find?
A. I found several people by a car that it looked like it had been burglarized. It  apparently there were several people who worked at the hospital who had gone in pursuit of someone who had done it.
Q. What description was there of the individual?
A. It was a young black male, green shirt, green pants, tennis shoes, on a red bike, had some kind of brownish colored bag or small suitcase.
Q. All right.
Did you put that over the radio?
A. Yes, I did.
Q. What did you put over the radio, this thing you just said or what?
A. The same as I said.
THE COURT: Describe that again, Officer Morgan. Black male, green shirt?
A. Green pants.
BY MR. SMITH:
Q. Green pants.
A. Tennis shoes, red bike with a brownish bag or small suitcase on the back.
THE COURT: All right.
Within several minutes (between three and ten), another officer, Paul Page, spotted the defendant, King, who matched the description in all particulars, some five or six blocks from the hospital, riding away from it. Officer Page stopped King and detained him until the arrival of Officer Morgan. The officers told King he was a suspect; they testified that he was unusually friendly, to the extent of arousing their suspicions. There was no substantial indication that the defendant was armed. At the time the two officers were talking to King, he was standing beside his bicycle. At this point, the officers unzipped and searched a bowling bag affixed to a carrying rack on the back of the bicycle. Both officers testified this was a search for weapons. Inside the bag the officers found two citizen-band radios and an eight-track tape player, some screwdrivers, small hand tools and coathangers. The officers then arrested King and searched his person.
At the suppression hearing, the defense argued that the warrantless search of the bag was unreasonable on two bases: (1) the Chadwick[1] closed-container doctrine, and (2) the absence of any reasonable belief that defendant was armed under Florida's "stop and frisk" statute.[2] The state argued that the officers had sufficient grounds to fear a weapon, thus justifying the search of the bag, which was within the reach of the defendant at the time. In attempting to argue evidentiary exceptions to the Chadwick doctrine, or to justify the applicability of the "stop and frisk statute," the state *772 failed to emphasize its argument to the trial court based upon search incident to lawful arrest.
The trial court observed that at the time they initially stopped King, the officers had probable cause to arrest him because he matched exactly the detailed description ("that fit the defendant to a `t'", according to the trial judge). But the trial court felt that, even given a valid arrest, the Chadwick doctrine precluded a search of the closed bag absent exigent circumstances indicating an immediate threat to the safety of the officers. In this case, said the court, there was no evidence of a weapon or threat. Therefore, the court ruled that the warrantless search of the bag was invalid and granted the motion to suppress.
On appeal, the state argues that the search of the bag was incident to a custodial arrest in an area within that person's immediate control. See § 901.21(1)(a), Fla. Stat. (1979); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At the suppression hearing, the state correctly observed that a valid search may precede an arrest where probable cause to arrest exists before the search is made. Thomas v. State, 395 So.2d 280 (Fla.3d DCA 1981); State v. Byham, 394 So.2d 1142 (Fla. 4th DCA 1981); Dixon v. State, 343 So.2d 1345 (Fla.2d DCA 1977). The trial court correctly found that there was probable cause for the arrest of King prior to the search, but then applied a Chadwick rationale to the facts. Finding no evidence of a threat or weapon, the trial court in effect equated the bowling bag on the rear of King's bicycle with the double-locked footlocker, which in Chadwick had been removed from the open trunk of a parked car and was, at the time of search, safely immobilized by police officers and far removed from the presence of the arrested person. It was clear in Chadwick that the Chimel exception (i.e., search incident to a lawful arrest) was not applicable. But the question under the instant facts is governed by the Chimel test, which has recently been reaffirmed by the United States Supreme Court.[3]
The controlling Chimel rationale is set forth in the following paragraph:
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or its destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary item, must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"  construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence.
395 U.S. at 762, 89 S.Ct. at 2040.
Once there was a valid arrest, or probable cause for such an arrest, the question in regard to the validity of the search was not the existence of independent evidence of a weapon as required for either an exception to the Chadwick doctrine or the applicability of the "stop and frisk" law. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under Chimel, the issue is not whether the arrestee and the area "within his immediate control" may be searched, for the lawful arrest establishes the authority to search. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). A search incident to arrest  including the area within the "immediate control" of the arrestee  may be searched regardless of whether *773 there is probable cause to believe that the person arrested possesses a weapon. Chadwick, 433 U.S. at 14, 97 S.Ct. at 2476; Robinson, 414 U.S. at 236, 94 S.Ct. at 477.
The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved.
Chadwick, 422 U.S. at 14-15, 97 S.Ct. at 2485.
Similarly, the Robinson[4] court stated:
Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the police officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that the respondent was armed.
414 U.S. at 236, 94 S.Ct. at 477.
So long as a lawful arrest has been made or, as here, probable cause to arrest existed at the time of the search, the arrestee and the area within his immediate control may be searched. In the present case, King was standing next to the bicycle to which was affixed the bag that was searched. The question at that point simply was whether or not the bowling bag was "within the immediate control" of King at the time of the search. Clearly, under this evidence, it was. Indeed, the defense has never asserted otherwise, either before the trial or appellate court.
Accordingly, the order of suppression is reversed, and this cause remanded for further proceedings below consistent with this opinion.
REVERSED and REMANDED.
SHARP and COWART, JJ., concur.
NOTES
[1] United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); see also, Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979).
[2] § 901.151, Fla. Stat. (1979).
[3] See New York v. Belton, ___ U.S. ___, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
[4] Robinson concerned only a search of an arrestee's person incident to arrest. Its rationale applies to a search of the place within an arrestee's immediate control, since the scope of a permissible search incident to arrest includes the immediate control area.