419 So.2d 757 (1982)
STATE of Florida, Petitioner,
v.
Willie CROMARTIE, Respondent.
No. AH-140.
District Court of Appeal of Florida, First District.
September 22, 1982.
*758 Donald S. Modesitt, State Atty., and Joseph S. White, Asst. State Atty., Tallahassee, for petitioner.
Michael Allen, Public Defender, and Thomas S. Keith, Asst. Public Defender, Tallahassee, for respondent.
BOOTH, Judge.
The petitioner, the State of Florida, seeks writ of certiorari to review a circuit court order affirming a county court order suppressing certain identification evidence, physical evidence, and admissions by the accused, Willie Cromartie. See Fla.R. App.P. Rule 9.030(b)(2)(B); Fla. Const.Art. V § 4(b)(3).
On the morning of December 10, 1980, a police officer was dispatched to a sorority house to investigate the theft of a bicycle. Witnesses at the scene told the officer they had seen a man enter a walled area which abutted the side of the house, take a bicycle from that area, and ride it away.
The walled area adjacent to the house was 60 feet away from the public sidewalk and surrounded by an eight-foot stone wall. This enclosure had one small opening which served as an entrance and exit, and was used for bicycle storage and sitting purposes by the occupants of the house.
Witnesses described the suspect as a slender black male, five feet eight to five feet ten inches in height, about 18 to 20 years old, with short-cropped hair. The witnesses further stated that the suspect was wearing a yellow jacket with a black stripe and dark clothing, and was carrying a pair of brown gloves.
The officer left the scene and drove in the direction the witnesses told him they had seen the suspect riding a bicycle. Less than one mile from the crime scene and approximately ten to fifteen minutes after the officer initiated his report, the officer saw Cromartie walking with two black females. Cromartie matched the description given by the witnesses in every respect. After a brief conversation, during which the officer told Cromartie he was investigating a reported crime and Cromartie matched the description of the perpetrator, Cromartie voluntarily accompanied the officer back to the crime scene. At the sorority house, a second officer stood outside the house with Cromartie while the officer went inside and asked the witnesses if the man outside was the same man they had seen earlier in the day entering the walled area and taking the bicycle. At that time, three witnesses positively identified Cromartie as the perpetrator. He was then placed under arrest, advised of his Miranda warnings, and told that he could be charged with burglary of the curtilage of a structure, a felony, or with petit theft, a misdemeanor.[1] After further questioning, Cromartie led the officer to the bicycle in question, which was recovered and returned for identification by the officer.
Cromartie was charged by information with petit theft and filed a motion to suppress all statements made by him, the identification evidence, and evidence relating to the recovery of the bicycle as fruits of an allegedly illegal arrest.
Hearing was held in county court; and, after hearing testimony from the arresting officer and Cromartie, the court entered an order of suppression finding that the "show-up" identification evidence and any evidence or statements made by Cromartie after the arrest must be suppressed.
The State appealed to the circuit court, which affirmed the suppression order of the county court on grounds the arrest for petit theft was illegal because the offense occurred outside the presence of the officer. The circuit court further found that the show-up identification procedure was impermissibly suggestive.
Section 901.15(1), Florida Statutes, authorizes warrantless arrests for misdemeanors only when the offense is "committed ... in the presence of the officer." See, e.g., Phillips v. State, 314 So.2d 619 (Fla. 4th DCA 1975). However, Section 901.15(3) provides that warrantless arrests *759 are also valid where the officer "reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has committed or is committing it." Here, at the time the officer made the decision to apprehend Cromartie, the officer believed that the suspect's entry of the curtilage of the sorority house with the intent to commit larceny therein constituted burglary, a felony.[2] The facts support the reasonableness of the officer's belief that a felony had been committed. The State's subsequent decision to charge Cromartie with a misdemeanor does not affect the reasonableness of the officer's belief at the time he apprehended the suspect. Further, due to the specificity of the description given by witnesses, the officer also had a reasonable belief that Cromartie was the perpetrator.
The validity of an arrest does not depend on whether the offense ultimately charged is a felony or misdemeanor if the arresting officer reasonably believes at the time of the arrest that a felony has been or was being committed. Chaney v. State, 237 So.2d 281 (Fla. 4th DCA 1970), cert. denied, 242 So.2d 461 (Fla. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); United States v. Ullrich, 580 F.2d 765 (5th Cir.1978). Accordingly, Cromartie's arrest was not invalid as being contrary to Section 901.15, Florida Statutes.
We further hold that the "show-up" identification procedure was not in violation of defendant's rights. The test for determining the legality of an out-of-court identification procedure is two fold: "(1) did the police employ any unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." Grant v. State, 390 So.2d 341, 343 (Fla. 1980). Factors to be considered in evaluating, (2) supra, the likelihood of irreparable misidentification under the totality of circumstances include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 3821, 34 L.Ed.2d 401 (1972). See also, Glas v. State, 329 So.2d 341 (Fla. 3d DCA 1976).
Here, there was no "unnecessarily suggestive" procedure employed. The show-up identification procedure is, by its nature, suggestive in that, unlike a line-up, a witness is presented with only one possible suspect for identification, but is not invalid for this reason if the procedure did not give rise to substantial likelihood of irreparable misidentification under the totality of the circumstances. Grant v. State, supra. In the instant case, three witnesses had the opportunity to view the suspect in daylight removing the bicycle from the curtilage of the sorority house, and Cromartie matched the description given by the witnesses. Only a very short time had elapsed since the commission of the offense when Cromartie was returned to be viewed by the witnesses, and he was identified with certainty.
An identification made shortly after a crime is inherently more reliable than a later, in-court identification because the incident is still fresh in the witness' mind. In State v. Freber, 366 So.2d 426, 428 (Fla. 1978), the Supreme Court held:[3]
In our view, an identification made shortly after the crime is inherently more reliable than a later identification in court. The fact that the witness could identify the respondent when the incident was still so fresh in her mind is of obvious probative value... . It is certainly not unusual for the appearance of a defendant *760 to change in some way between his apprehension and trial. A holding not allowing this sort of testimony as substantive evidence of identity would encourage defendants to change their appearance before trial to avoid being identified in court. Without this proof that the person previously identified by the witness was the defendant, conviction would in some instances be impossible.
We also note that prompt identification of a suspect following the crime allows release of persons wrongly apprehended and immediate continuation of police efforts to capture the real perpetrator. Further, the show-up procedure avoids loss of critical identification information which occurs where victims of offenses succumb shortly after the offense or witnesses become unavailable.
Certiorari is granted, and the order of suppression entered below is REVERSED.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] The value of the bicycle was approximately $60.
[2] See Sections 810.01 and 810.011, Florida Statutes (1979); Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974).
[3] In State v. Freber, 366 So.2d 426, the victim of a burglary identified the suspect brought by police to her house "later on morning of the crime."