MILLS, Judge.
The State appeals from the trial court’s order granting Williams’ motion to suppress evidence found after a search of the glove compartment of Williams’ car. We affirm.
Williams was identified to the police by a confidential informant as the girlfriend of a cocaine supplier from whom the informant had obtained cocaine. The informant told police that the cocaine was kept in the supplier’s apartment in a safe, which had been previously opened in the presence of both the informant and Williams, and appeared to contain cocaine.
Following their receipt of this information, the police set up a surveillance of the apartment. During the surveillance, the officer on duty observed Williams pull into the apartment parking lot in a car which had been described by the informant as belonging to her. After scanning the lot, Williams and a companion entered, the apartment and emerged with a-“brown boxlike object” and a paper sack. Both items were placed in the car trunk, which was then shut. Williams re-entered the car and drove from the lot.
The surveillance vehicle followed her, and it became apparent from the evasiveness with which Williams drove that she was aware of the “tail.” At this point, the driver of the surveillance vehicle, who had remained» in radio contact with officers at the State Attorney’s Office, was advised by those officers to stop and search Williams’ car.
The car was blocked into a parking space by police vehicles. There is conflict over whether Williams next voluntarily opened the trunk or was forced to do so; in any case, the trunk was opened and a locked safe observed therein. Williams, who had not been placed under formal arrest at this time, was ordered to open the safe but could not do so. The contents of the safe therefore remained unknown to the police until it was later searched with a warrant at the police station.
Following the discovery of the safe, Williams still was not placed under formal arrest; The officers nevertheless proceeded to search the interior of the vehicle. Upon opening the glove compartment, the officers found small quantities of cocaine and marijuana. Williams was then placed under arrest on charges of possession of cocaine and cannabis.
She later moved to suppress both the evidence found in the trunk and that in the glove compartment. The trial court denied the motion as to the evidence from the trunk, and the propriety of that ruling is not before us. The motion was granted, however, as to the contraband found in the glove compartment, on the grounds that Williams was not under arrest at the time of the search nor was there any other exception to the warrant requirement justifying the search. It is from this latter ruling that the State appeals.
The State urges three grounds for reversal of the trial court’s order. First, it cites U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), for the proposition that if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. Police had the requisite probable cause in this case, the State argues, because the safe, described to them by an informant as containing cocaine, was placed in the trunk of the car, also known to them through the informant. It was reasonable to assume that any contraband or other incriminating evidence would have been secreted in the glove compartment or other interior areas of the car once its occupants were alerted to the police tail.
*71 The State next asserts that the search of the glove compartment was incident to lawful arrest as authorized by New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), (when an officer has made a lawful custodial arrest of the occupant of an automobile, he may search the passenger compartment as an incident of arrest). While not asserting that Williams had been formally arrested at the time that the glove compartment was searched, the State argues that she was effectively under arrest based on the factors set forth in Melton v. State, 75 So.2d 291 (Fla.1954). The State also relies on this court’s decision in Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982) which established that it is unimportant that a search might precede formal arrest, so long as probable cause exists absent the results of the search and the arrest immediately follows the search.
Finally, the State argues that the evidence should be permitted under the “inevitable discovery theory” of Nix v. Williams, — U.S. -, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The gist of this doctrine is that if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means, then the deterrence rationale for suppressing the evidence has so little basis that the evidence should be received. Here, the State claims that the contraband in the glove compartment would inevitably have been discovered in an inventory search by the police following seizure of the car. There is no evidence that such a search occurred, but the police did seize the car pursuant to Section 932.703, Florida Statutes (1983), and “it is a reasonable presumption that the contents were inventoried.”
First, the State’s reliance on Ross is misplaced. Assuming without deciding that the police did have the requisite probable cause to stop Williams’ car, the probable cause they had was to believe that a container placed in the car trunk contained the contraband, not that it was concealed somewhere in the vehicle. See Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1923) (the warrantless search of an automobile which the police had probable cause to believe contained contraband is valid, based on the impracticability of securing a warrant in cases involving the transportation of contraband). As the Ross court pointed out:
“The mere fact that the [container] had been placed in the trunk of the vehicle did not render the automobile exception of Carroll applicable; the police had probable cause to seize the [container] before it was placed in the trunk ... and did not have probable cause to search the [vehicle] itself. Since the [container] had been placed in the trunk, no danger existed that its contents could have been secreted elsewhere in the vehicle.”
Ross, 456 U.S. at 812-813, 102 S.Ct. at 2166-67. The same situation exists here. The box was placed in the trunk, which was then shut. The police never lost sight of the car thereafter until the stop. Therefore, the trunk could not have been reopened and the safe’s contents secreted elsewhere in the vehicle, as the State argues.
It is true that the Ross court established the scope of the warrantless search of an automobile when stopped on probable cause as follows: “If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.” Ross, at 825, 102 S.Ct. at 2172. However, the definition was further refined by the court:
The scope of a warrantless search of an automobile ... is defined by the object of the search and the place in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a [vehicle] contains contraband ... does *72 not justify a search of the entire [vehicle].
Ross at 824, 102 S.Ct. at 2172 (emphasis supplied). Because police had probable cause only to search the container in the trunk of the car, that probable cause did not extend to the entire vehicle, and we therefore find that Boss cannot justify the search herein.
We also disagree with the State’s contention that Williams was effectively under arrest at the time of the glove compartment search. Melton, supra, relied on by the State, established the following criteria for the existence of an effective arrest:
(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
Here only the second criteria is even arguably fulfilled, since Williams’ car was blocked in by police vehicles. As to the others, nothing demonstrates a purpose or intent to arrest, as the officers were instructed by radio to stop the car only for purposes of searching it. Neither does anything in the record suggest that the police communicated an intent to arrest to Williams or that she understood that to be their intention. We therefore find that Williams was neither effectively nor actually under arrest at the time of the search so as to justify it under Belton.
This Court’s opinion in Wright v. State, supra, does not mandate a different result. The case decided only that “a search incident to arrest may precede formal arrest so long as ... probable cause to arrest existed absent the result of the search....” Id. at 1091 citing Rawlings v. Kentucky, 448 U.S. 98, 110-11, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Here, Williams was not arrested until after the glove compartment search revealed cocaine and marijuana, despite the previous discovery of the safe. Indeed, the contents of the safe were unknown until after the arrest, so no charge of possession could have been made based thereon. Therefore, because there was no probable cause to arrest Williams without the contraband found in the pre-arrest search, Wright does not control.
Finally, we must reject the State’s argument based on the inevitable discovery theory established in Nix, supra. The State contends that it is reasonable to presume that the car was inventoried after its seizure by police, at which time the contraband would have “inevitably” been discovered. Section 932.702, Florida Statutes (1983), provides:
It is unlawful:
(1) To transport, carry, or convey any contraband article in, upon, or by means of any ..., motor vehicle, ...
(2) To conceal or possess any contraband article in or upon any ..., motor vehicle,

(3) To use any ..., motor vehicle, ... to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article. ...
Section 932.703, Florida Statutes (1983), goes on to state that “any ... motor vehicle ... which has been ... used in violation of any provision of Section 932.702 ... shall be seized.” Here, the only basis for seizure of Williams’ car under Section 932.-703 was that the cocaine and marijuana were discovered by way of the unlawful search of the glove compartment, as no other contraband article had been found up to that point. Therefore, the seizure of the vehicle was not warranted. We are unwilling to reverse the court’s order based on the theory that an inventory search subsequent to this improper seizure would have discovered the contraband.
AFFIRMED.
*73 ZEHMER, J., concurs.
ERVIN, C.J., dissents with written opinion.