463 So.2d 546 (1985)
James D. McCARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 83-1714.
District Court of Appeal of Florida, Fifth District.
February 14, 1985.
*547 James B. Gibson, Public Defender, and Lucinda H. Young, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Evelyn D. Golden, Asst. Atty. Gen., Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
McCarter appeals from his conviction, entered pursuant to a plea of nolo contendere, for carrying a concealed firearm. McCarter specifically reserved the right to appeal an order denying his motion to suppress the seized firearm.
At the suppression hearing, Detective Anderson of the Daytona Beach Police Department was the primary witness. Anderson testified that he arrested McCarter at the Daytona Beach airport on August 12, 1982, following an investigation which had been prompted by information received from a private detective, Mansour. Anderson's testimony and an affidavit from Mansour, which was introduced by the State without objection, provide the factual background for the arrest.
John Cochran was a student at a North Carolina college. In 1979, he visited St. Augustine, Florida, on spring break and was hired by a couple to paint their house. Cochran and the wife became involved and she later gave birth to his child. The husband was upset with this turn of events and began harassing Cochran and making telephone calls threatening his life.
In 1982, after some bizarre developments occurred, Cochran and his father consulted an attorney who advised them in the interest of the son's safety to hire Mansour to *548 investigate. Mansour's investigation, as outlined in his affidavit, reflected the following. In March of 1982, John was approached in North Carolina by a woman, Jay Jordan, using the name Jane Thompson. It was later discovered she was paid by McCarter. She claimed to be researching the Cochran family name and told John that her husband could help him get a job in South America. John suggested she talk to his father, but she failed to contact Cochran, Sr., and the Cochrans became suspicious. Around July 3, 1982, the Cochrans received a call from a Frank Alexander, who was later discovered to be McCarter. McCarter stated that Jay Jordan had told him about John and his company was interested in him. McCarter represented that the job in South America would net John a lot of money. A meeting was set up in the bar at the Holiday Inn in Raleigh, North Carolina. The Cochrans were suspicious and Cochran, Sr. accompanied his son. McCarter represented that John would make up to $60,000 a year, but was evasive about the name of his company, saying only that he was a recruiter for a big company.
On July 8, McCarter contacted John by telephone and said there would be a conference and interview in Daytona Beach, Florida, at the Howard Johnsons hotel. McCarter told John he would send a ticket and information about the company and a telephone number where he could be reached. John never received any such material.
Mansour visited Daytona Beach to see if there was in fact a meeting. Alexander (McCarter) was not registered nor was there a conference scheduled at the designated hotel. The detective checked other hotels and could not find Alexander or any similar conference.
Several weeks passed before Alexander (McCarter) again contacted John, reporting he had a ticket for him to Daytona and had booked him into the Howard Johnsons where an employment seminar was being held. Convinced that the mysterious Alexander intended to harm John, Mansour took this information to the Daytona Beach police.
Upon Cochran's arrival in Daytona Beach, the police were waiting. They observed McCarter approach Cochran and the two men walked to a vehicle parked in the airport lot. When McCarter opened the front passenger door for Cochran, the police appeared, placed him under arrest for attempted murder, and conducted a search of the vehicle. They discovered a partially opened briefcase in the front seat which contained a .32 caliber revolver, an ice pick, mace and several other items including surgical gloves. These items were located approximately two feet from where McCarter was standing when he opened the door for Cochran.
On appeal, McCarter argues that the police lacked probable cause for the arrest and therefore the search was invalid. This claim must fail for two reasons.
First, McCarter did not argue below that the police lacked probable cause for an arrest, only that they lacked justification to search the car and briefcase. Indeed, at one point in the proceedings, the state attorney, in trying to formulate the issue raised by McCarter declared "I think the issue is that the police had no probable cause to arrest this man ... that's not the issue?", to which defense counsel responded "No, sir." Given the fact that this issue was not raised below, McCarter is in no position to argue it now on appeal. See State v. Varnedoe, 443 So.2d 201 (Fla. 3d DCA 1983); W.J.S. v. State, 409 So.2d 1209 (Fla. 1st DCA 1982).
Even if he were, the facts presented amply establish probable cause for McCarter's arrest on a charge of attempted kidnapping.[1] Probable cause to *549 arrest exists when facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has or is being committed. McKee v. State, 430 So.2d 983 (Fla. 3d DCA 1983); Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982). The facts recounted above supply a reasonable basis to conclude that McCarter, who was deceitfully luring Cochran from North Carolina back to east-central Florida, the area from which the death threats had come, was acting in league with the husband who was making those threats. At the time that McCarter met Cochran at the airport and opened the car door for him, there was probable cause to believe that McCarter was attempting to secretly abduct Cochran against his will and without lawful authority, with the intent to physically harm him.[2] Since probable cause for the arrest existed, the police were permitted to search the area where McCarter might have had access to a weapon, New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. King, 405 So.2d 770 (Fla. 5th DCA 1981), and the briefcase was included in this area.
For the above stated reasons, the order denying McCarter's motion to suppress is
AFFIRMED.
COBB, C.J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
This is a case where the evidence does not constitute probable cause justifying an arrest and an incidental search and seizure.
A private detective stated facts to police officers in Florida that could cause a suspicious person to suspect that the defendant may have been acting at the instance of one C.R.S., who had reason to bear malice toward one John C.,[1] and, if so, that the defendant may have acted with a bad motive when he made an attractive job offer to John C. and induced John C. to fly from North Carolina to Florida. The police officers set up a meeting between John C. and the defendant at the airport and saw the two persons meet and go toward a parked car. When the defendant opened the passenger car door for John C., the police officers arrested the defendant for attempted murder and then conducted a warrantless search of the parked car and seized a handgun from a briefcase on the front seat.
At a probable cause hearing the State presented their case arguing that the police had probable cause to arrest the defendant for attempted murder. The trial court expressly found that there was no probable cause to arrest the defendant for attempted murder. That finding and ruling was not appealed and is the law of the case. Defendant was then charged with carrying a concealed firearm in violation of section 790.01(2), Florida Statutes. The trial court denied a motion to suppress the seized handgun made on the ground that the arrest and incidental search and seizure were illegal because there was no probable cause for the arrest. The defendant pled nolo contendere reserving the right to take this appeal from the denial of the motion to suppress.
*550 The State does not contest the validity of the first order finding lack of probable cause to arrest for attempted murder but contends, weakly, that the evidence was sufficient to constitute probable cause to believe the defendant was engaged in some other "criminal activity" (such as a conspiracy to commit murder) justifying his arrest, or, at least, that the evidence created a "reasonable suspicion" the defendant was engaged in "criminal activity" justifying a police stop for questioning. This will not do it. Probable cause authorizing an arrest without a warrant requires good reason to believe that a felony has been or is being committed and that the person arrested has committed or is committing it (§ 901.15(3), Fla. Stat.). A reasonable suspicion of criminal activity justifying a temporary detention to ascertain identification and circumstances under section 901.151(2), Florida Statutes, does not authorize an arrest and the search of a nearby vehicle. John C., who met the defendant at the airport as part of a police set-up, was under direct police protection and no risk except such as he and the police chose. However, belief in the existence of a risk of harm is no substitute for the absence of implicative facts constituting probable cause to believe a felony crime has been committed. Neither earlier nor later nor at the time of arrest did the police have any facts, direct or circumstantial, linking the defendant with the irate husband, C.R.S., and without a pure assumption as to that connection there was no factual basis to support a reasonable belief that the defendant intended to commit a crime against the person of John C. Accordingly, of course, there was and is no evidence as to what crime the defendant intended to commit against John C.
The defendant's motion to suppress squarely raised the issue of the legality of the search of defendant's car. The only possible basis for the lawful search of defendant's car was that the search was incidental to a lawful arrest. It is rather self-evident that the legal issue on such a motion to suppress involves the validity of the arrest.
Implying some type of waiver from defense counsel's statement at oral argument the majority recites the proposition that if an issue (such as the illegality of the arrest, as distinguished from the illegality of the resulting search) is not "raised" (argued?) below it cannot be argued on appeal. The majority opinion then holds that there was probable cause for defendant's arrest for attempted kidnapping notwithstanding that the legal issue as to probable cause to arrest for an attempted kidnapping was never raised in the trial court, was never considered or ruled on by the trial judge, and was never once argued or suggested by the state before the trial court or this appellate court, in its brief or otherwise. That idea is first presented in the majority opinion. There has been no allegation or claim asserted, no evidence presented and no hearing or judicial finding or ruling made in the trial court that before his arrest defendant's overt acts indicated a specific intent forcibly, secretly, or by threat, to confine, abduct or imprison John C. against his will and without authority and with intent to inflict bodily harm upon him.
No facts relevant to probable cause to believe defendant had committed a crime occurred at the airport. All the relevant facts that constituted the police suspicion resulting in defendant's arrest were known to the police before defendant met John C. at the airport. If adequate facts existed showing probable cause that defendant had committed, or was intending to commit a crime against the person of John C., then defendant could have, and should have, been arrested before the airport police setup occurred. If the prior facts plus the events at the airport constituted prima facie evidence that defendant had committed a crime before he was arrested, then he could have, and should have, been charged on those facts with that crime instead of the concealed firearms charge as to which all evidence was obtained from the illegal search that followed the illegal arrest. The order finding no probable cause for arrest for attempted murder was correct and conclusive *551 of the issue as to the legality of the arrest. Making a job offer, meeting the offeree at an airport and opening a car door for him is not a crime nor do those acts constitute the "overt act" (an act going beyond mere preparation but falling short of accomplishment of the intended offense) required by the statute defining the offense of attempt (§ 777.04(1), Fla. Stat.), of an attempted murder or an attempted kidnapping. The arrest was illegal and the search of the vehicle was based on the illegal arrest. Accordingly, the search was illegal and the motion to suppress should have been granted.
The point on appeal, being dispositive of the case, the judgment of conviction and sentence should be reversed and the defendant discharged.[2]
NOTES
[1] Section 787.01, Florida Statutes (1981), provides in part:

(1)(a) "Kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
* * * * * *
3. Inflict bodily harm upon or to terrorize the victim or another person.
The fact that McCarter was arrested for attempted first degree murder rather than attempted kidnapping does not invalidate the search incident to the arrest since the label placed upon an arrest by the arresting officer is not determinative of the question of whether the arrest was legal. See State v. Cromartie, 419 So.2d 757 (Fla. 1st DCA 1982); Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981); Chaney v. State, 237 So.2d 281 (Fla. 4th DCA 1970).
[2] The term "secretly" as used in the kidnapping statute means that the abduction or confinement is intended by the defendant to isolate or insulate the intended victim from meaningful contact or communication with the public. Robinson v. State, 462 So.2d 471 (Fla. 1st DCA 1984); Miller v. State, 233 So.2d 448 (Fla. 1st DCA 1970).
[1] The background facts, while interesting, are irrelevant except to show the factual basis for belief that C.R.S. had reason to have animosity and ill will against John C. John C. had previously cuckolded C.R.S.
[2] Another controlling point of law, inherent in the facts, is that a person outside of a vehicle (where the defendant was when he was arrested) is not carrying "on or about his person" a firearm which is located in a briefcase on the front seat of the vehicle, so as to constitute a violation of section 790.01(2), Florida Statutes.