474 So.2d 903 (1985)
STATE of Florida, Appellant,
v.
Roberto DIAZ and Edgar Ferdinand Roman, Appellees.
No. 84-1590.
District Court of Appeal of Florida, Fifth District.
August 29, 1985.
Jim Smith, Atty. Gen., Tallahassee, and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellant.
Kenneth R. Lester, Jr., of Greenberg & Lester, Fern Park, for appellee Diaz.
James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellee Roman.
BOARDMAN, E.F., Associate Judge:
The State appeals from two orders which granted in part each defendant's motion to *904 suppress on the ground that certain evidence was obtained as the result of an unlawful search and seizure. We reverse.
At 1:00 p.m. on March 20, 1984, officer William McEachnie received a phone call from a confidential informant, with whom McEachnie had worked for two years and who had always proven to be reliable. The informant told McEachnie he would be meeting with the person known as "Ed" at a specified apartment to set up a possible cocaine transaction later that afternoon. After receiving the phone call, McEachnie and several other officers went to the area to conduct surveillance of the apartment. At 2 p.m. the informant met with McEachnie across from the apartment. The informant told him that he had been in the apartment and had discussed the terms of a cocaine transaction with two Latin males, one of whom was Ed. He further reported that during his discussion with these two men, he had seen a firearm and had seen one of the men place a large amount of cocaine in a brown briefcase. After speaking with McEachnie, the informant went to a pay phone and spoke to Ed to make further arrangements. At 2:50 p.m., the informant met with McEachnie again. This time he told McEachnie that the two Latin males were about to leave the apartment to travel to the informant's residence to conduct the cocaine transaction. The men would be carrying the briefcase containing the cocaine and they would be entering a Mustang or a Lincoln. The informant gave McEachnie the tag numbers of the two vehicles as well as a description of them. McEachnie then relayed this information to the other officers.
John Tegg was one of the officers assigned to observe the apartment. Within ten minutes of receiving the information from McEachnie, officer Tegg saw two Latin males exit the apartment, one of them carrying a brown briefcase. He saw them get into a Mustang which matched the earlier description and which proceeded to leave the vicinity. A police vehicle then stopped the Mustang and Tegg went to the driver's side of the Mustang and pulled out a person later identified as defendant Roman. After Roman was secured with handcuffs, Tegg went back to the vehicle and saw the briefcase in the backseat of the car. He opened the briefcase and found a large plastic bag containing what appeared to be cocaine. Two firearms were then located, one under the driver's seat, the other on the person of defendant Diaz. Defendants were subsequently charged with trafficking in cocaine and with possession of a firearm in the commission of a felony.
Based on these facts, the trial court granted in part defendants' motions to suppress, suppressing the cocaine but not the firearms. In its orders, the trial court considered many cases but found the cases of United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and Mancini v. State, 448 So.2d 573 (Fla. 1st DCA 1984), to be controlling. In Ross, the United States Supreme Court held that police officers who have lawfully stopped an automobile and who have probable cause to believe that contraband is concealed therein may conduct a warrantless search of the vehicle and may open any containers large enough to contain the contraband. As the Supreme Court indicated, its holding was based on the "automobile exception" to the warrant requirement established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (warrantless search of an automobile which police have probable cause to believe contains contraband is valid, based on the impracticability of securing a warrant in cases involving the transportation of contraband). However, as pointed out by the trial court in this case, the Supreme Court in Ross did make a distinction between probable cause to believe that a vehicle contains contraband somewhere therein and probable cause to believe that contraband is located in a container which has been placed in a vehicle. In the latter situation, the Supreme Court indicated that the Carroll "automobile exception" did not apply and instead the situation would be controlled by Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and United *905 States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (warrant must first be obtained in order to search containers suspected of containing contraband). The facts of Mancini as well as the facts of this case do fall under the latter situation and therefore the trial court correctly determined that Ross and Mancini did not provide the justification for searching the briefcase in this case. Two other recent cases, State v. Williams, 462 So.2d 69 (Fla. 1st DCA 1985), and Manee v. State, 457 So.2d 530 (Fla. 2d DCA 1984), review denied 464 So.2d 556, cert. denied ___ U.S. ___, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985), also support the trial court's analysis of the probable cause to search theory. However, the trial court failed to fully consider another theory which was raised and argued by the State, specifically, the New York v. Belton[1] "search incident to lawful arrest" theory. In Belton, the United States Supreme Court held that when an officer had made a lawful custodial arrest of the occupants of an automobile, he may search the passenger compartment of the automobile and may open any container found in the search. Thus, if the arrests in this case were lawful, then the police had the right to search defendants' briefcase without the necessity of a warrant.[2]
We think the arrest in this case can be justified on the authority of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In Draper, a federal agent was stationed in Denver, Colorado, where a certain informant, who had always been found to be accurate and reliable, had been giving the agent information regarding violations of the federal narcotics laws. One day the informant told the agent that a certain individual (James Draper) had gone to Chicago the day before by train and was going to bring back three ounces of heroin either the next day or the day after. The informant also gave the agent a detailed physical description of Draper and the clothing he was wearing and said that Draper would be carrying a tan zipper bag and that he habitually "walked real fast." For the next two days, the agent went to the Denver Union Station and kept watch on all incoming trains from Chicago. On the second day, he saw a person having Draper's exact physical attributes and clothing and carrying a tan zipper bag and walking fast. The agent then stopped the person (Draper), arrested him, and found two envelopes containing heroin clutched in Draper's left hand in his pocket. The United States Supreme Court held that the agent's knowledge of the related facts and circumstances gave the agent probable cause to believe that Draper had committed or was committing a violation of the federal narcotics laws and therefore it found that the seizure of the heroin was incident to a lawful arrest.
Here, as in Draper, the information regarding the suspects was supplied by a known reliable informant and the police were able to personally observe the events which the informant had said would occur.[3] Therefore, we believe that when the officers observed the described suspects carrying the brown briefcase and getting into the specified vehicle, they had probable cause to believe that the suspects were in the process of committing the offense of *906 trafficking in (or at least possession of) cocaine. The fact that the officers may have stopped the vehicle (and arrested the men in it) for the purpose of conducting a search rather than making an arrest does not alter the fact that they objectively had probable cause to arrest. See Sommer v. State, 465 So.2d 1339, 1344 (Fla. 5th DCA 1985) (fact that police justified search as inventory search did not preclude validity of search as one incidental to lawful arrest). See also Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981) (where probable cause to arrest for certain offense exists, the validity of the arrest is not affected by the fact that an arguably unsupportable arrest was made on another charge).
The "search incident to lawful arrest" analysis made herein would at first appear to be in conflict with State v. Williams, supra;[4] however, we think that case is distinguishable on the facts. In Williams, the information was not supplied by a known reliable informant and thus the police did not arrest the defendants until after a search of the vehicle produced contraband. The Williams court recognized that a search which preceeds formal arrest may nevertheless be upheld as a search incident to arrest so long as probable cause existed absent the result of the search;[5] however, the court found that the police did not have probable cause to arrest Williams until after the contraband was found in the pre-arrest search. Under the particular facts of this case, we hold that the police had sufficient probable cause to arrest the defendants without regard to the results they obtained when they opened the briefcase.
For the foregoing reasons, we reverse the trial court's order.
REVERSED.
DAUKSCH and SHARP, JJ., concur.
NOTES
[1] 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
[2] The trial court in this case did find that the arrests were lawful but, as did the trial court in State v. King, 405 So.2d 770 (Fla. 5th DCA 1981), misperceived the effect of that valid arrest. Here, the trial court mistakenly ruled that because of Mancini and Ross, the search incident to the lawful arrest could not include the briefcase (the object of the search) unless the police had first obtained a warrant to open the briefcase. This was in error because Belton makes it clear that as long as the arrest of an occupant of a vehicle is lawful, the police may search the passenger compartment of that vehicle and any container found in the search.
[3] These facts make this case an even stronger one than the facts of Tippins v. State, 454 So.2d 630 (Fla. 5th DCA 1984), where this court held that the information supplied by an anonymous telephone tipster was sufficiently detailed and corroborated under Draper and two other cases to justify at least a reasonable suspicion for detention under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] The "search incident to lawful arrest" theory was not discussed in Mancini or Manee.
[5] See Rawlings v. Kentucky, 448 U.S. 98, 110-11, 100 S.Ct. 2556, 2564-2565, 65 L.Ed.2d 633 (1980), and Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982), review denied, 426 So.2d 29 (Fla. 1983).