477 So.2d 658 (1985)
STATE of Florida, Appellant,
v.
Earnest SMITH and Daniel Oliver, Appellees.
No. 84-1861.
District Court of Appeal of Florida, Fifth District.
October 31, 1985.
*659 Jim Smith, Atty. Gen., Tallahassee, and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellant.
James B. Gibson, Public Defender, Lucinda H. Young, and Michael L. O'Neill, Asst. Public Defenders, Daytona Beach, for appellees.
UPCHURCH, Judge.
This is an appeal by the state from an order suppressing evidence. Appellees/defendants Earnest Smith and Daniel Oliver, charged by information with burglary of a conveyance and grand theft, moved to suppress their statements and the evidence seized on the grounds that the two had been unlawfully detained and that the evidence had been illegally seized without a warrant.
At the suppression hearing, the arresting officer testified that he first noticed Smith and Oliver as he was driving by a parking lot of a convenience store. He saw them near a dumpster at the corner of the building. They appeared to be taking something out of a brown grocery bag and exchanging it between themselves. Concerned about recent burglaries in the area, the arresting officer approached them. As soon as Smith and Oliver saw him, they bolted and split up, one running into a store, the other into a laundromat. The officer called on them to stop but neither complied. The officer found one in the store, stopped him and asked why he ran away. That defendant, apparently Oliver, replied that he had not run away and that he had been in the store the entire time. This story was contradicted by a store employee who stated that Oliver had been in the store only briefly. The officer requested identification and Oliver gave his name and address. Oliver later gave a different address.
While this was going on, a laundromat employee told the officer that an individual had been hiding in the bathroom of the building and had just walked out. The officer caught up with Smith and asked him why he had run away and why he was hiding. Smith did not answer. The officer then asked Smith to accompany him back to the dumpster, which he agreed to do.
All parties returned to the dumpster where it was discovered that the brown bag contained nine bottles of wine and another bottle of liquor. The bag was in the basket of one of the bicycles. The officer asked the defendants whether the bicycles or the bag belonged to them. The defendants stated that the bicycles were theirs, but that they did not know anything about the wine.
At this point, David Leger approached the group and stated that some wine had been stolen from his car. The defendants were arrested and read their rights. At the station, Leger told the defendants that the wine would have made them sick because it was wine vinegar for cooking. One defendant responded that they were not going to drink the wine but were going to sell it.
After reviewing the motion to suppress and testimony, the trial court granted the defendants' motion to suppress. The court found that the stop and detention of the defendants had been illegal, that the bottles had been illegally seized as the officer did not have a legally sufficient reason to believe that a crime had been committed, and that the statements made by the defendants were products of the illegal detention and "fruit of the poisonous tree."
On appeal, the state contends that the trial court erred in granting the motion *660 to suppress. As one ground,[1] the state argues that the officer's encounter with the defendants did not amount to a "seizure" of their person, which requires at least reasonable suspicion to believe criminal activity is afoot, but that it was a mere "street encounter" which intrudes upon no protected interest.
The courts have noted that there are at least three levels of police-citizen encounters, including: 1) the "street encounter" between police and citizens involving no coercion or detention and therefore not encompassed within the fourth amendment; 2) brief seizures that must be supported by reasonable suspicion; and 3) full scale arrests that must be supported by probable cause. Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982). In State v. Walden, 464 So.2d 691 (Fla. 5th DCA 1985), this court elaborated upon the differences between a street "encounter" and a "stop":
In Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 901 (1968), the United States Supreme Court recognized that street encounters between citizens and police officers are `incredibly rich in diversity'; they range from exchanges of useful information to hostile confrontations. In U.S. v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the Court noted that characterizing every street encounter between a citizen and the police as a `seizure' would impose undue restrictions on a wide variety of legitimate law enforcement practices, including effective police investigation.
Recently, in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Court elaborated that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See Dunaway v. New York, 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824, 834 n. 12 (1979); Terry, 392 U.S. at 32-33, 88 S.Ct. at 1885-1886, 20 L.Ed.2d at 909-910. (Harlan, J., concurring). The person approached need not answer any question put to him, and may decline to listen to the questions and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so and his refusal to listen or answer does not, without more, furnish those grounds. Royer, 460 U.S. at 498, 103 S.Ct. at 1324. The Florida supreme court restated these principles in Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 74 L.Ed.2d 725 (1984), where it discussed the differences between a `stop' and an encounter, explaining:
In Terry, the Supreme Court noted that `[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the street.' 392 U.S. at 34, 88 S.Ct. at 1886 (White, J., concurring). This is so even under normal conditions with officers having no concrete suspicion on which to rely. Of course in such situations a person would be under no duty to remain, and could continue on his way if he chose to do so. That person, instructed the Terry Court, `absent special circumstances may not be detained or frisked but may refuse to cooperate and go on his way.' Id. (Emphasis added).
There exists therefore, a distinction between an intrusion by police amounting to a `seizure' of the person and an encounter which intrudes upon no constitutionally protected interest. Terry v. Ohio; United States v. Mendenhall, *661 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); United States v. Elmore, 595 F.2d 1036 (5th Cir.1979), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).
* * * * * *
The Supreme Court has repeatedly acknowledged the need for police questioning as a tool for effective enforcement of our criminal laws. United States v. Mendenhall. Florida courts have recognized that, in this context, law enforcement officers can indeed initiate contacts with citizens without creating a stop and seizure situation.
464 So.2d at 692-693. See also Sommer v. State, 465 So.2d 1339 (Fla. 5th DCA 1985); Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985).
In the present case, the officer saw two individuals and two bicycles near a dumpster in an area where generally only employees are found. The individuals appeared to be sharing something out of a brown paper bag. Being aware of burglaries in the past in this area, the officer decided to investigate. At this point, i.e., while the officer was moving towards the defendants, there was no "seizure" of their persons and thus, at most, an attempted encounter between police and citizens occurred.
After the defendants fled and were tracked down by the officer, the encounter was elevated to a "brief seizure." See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person"). Here, the defendants were chased by an officer in a marked police unit and were ordered to halt several times. The officer himself testified that the defendants were not free to leave. This brief seizure or stop for investigatory purposes, however, need only be supported by a founded or reasonable suspicion.
In State v. Hunt, 391 So.2d 760 (Fla. 5th DCA 1980), this court described a founded suspicion as something less than probable cause but something more than a mere suspicion. It is a reasonable suspicion that requires further investigation. Here, the officer had knowledge of burglaries in the area, saw two youths near the dumpster area generally used only by store employees, and saw that the youths were sharing something out of a brown paper bag. When they spotted the officer, the defendants looked at each other and ran in opposite directions leaving their bicycles behind. In State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980), the court held that flight from the police evidences guilt and colors conduct which may otherwise appear innocent. Here, the defendants' actions near the dumpster, their presence in an area of recent burglaries, and their flight are sufficient to create a founded suspicion for a stop.
In United States v. Sharpe, ___ U.S. ___, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the United States Supreme Court declined to adopt a "hard and fast" time limitation for a permissible stop. Rather, in assessing whether a detention is too long in duration to be justified as an investigative stop, the Court examined whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. Here, the officer asked the defendants to accompany him to verify their stories and to investigate the items left at the dumpster. At this point, the officer discovered that the paper bag contained bottles of wine and liquor recently stolen from a nearby vehicle. The bag was in the rack on one bicycle. Smith and Oliver claimed ownership of the bicycles yet disavowed any knowledge of the stolen wine. None of the information received by the officer dispelled his suspicions and in fact, confirmed his suspicions. Based on his knowledge of recent burglaries in the area, the defendants' behavior and their proximity to the stolen items, the officer *662 had probable cause to arrest the defendants for burglary and theft.[2]
In summary, the officer's initial actions at most amounted to an attempted "encounter" with the defendants. The defendants' flight after spotting him, coupled with other suspicious circumstances, gave rise to a reasonable suspicion to stop them and to detain them for a brief time for investigation. After the defendants were briefly detained and the officer completed his investigation, he had probable cause to arrest them for burglary and theft. Since the initial encounter or attempted encounter was not encompassed within the fourth amendment and the brief stop and arrest were reasonable, the trial court erred in granting the defendants' motion to suppress.
REVERSED and REMANDED.
COBB, C.J., and COWART, J., concur.
NOTES
[1] The state's other arguments are without merit. For example, the state argues that the defendants abandoned the bottles and thus they lacked standing to request suppression of the items. The state also suggests that the "inevitable discovery" doctrine should be applied here. These theories were not presented to the trial court and thus cannot be raised for the first time on appeal. McCarter v. State, 463 So.2d 546 (Fla. 5th DCA 1985).
[2] Probable cause to arrest exists when facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has or is being committed. McCarter v. State, 463 So.2d at 548-549.