## STATE OF FLORIDA v SCHLEY

Case No. 72073-PH

County Court, Volusia County

April 21, 1987

### APPEARANCES OF COUNSEL

**Ben Fox,** Assistant State Attorney, for plaintiff.

**Douglas Huie,** Assistant Public Defender, for defendant.

### OPINION OF THE COURT

NORTON JOSEPHSON, County Judge.

THIS CAUSE came on to be heard on the Defendant's Motion to Suppress any and all evidence to include but not limited to driver's license taken from the defendant on or about February 17, 1987 by the Daytona Beach Police Department.

The defendant is charged with Possession of a Suspended Driver's License.

The facts are as follows:

On February 17, 1987 at 1:30 o'clock a.m., Officer Szabo of the Daytona Beach Police Department received a radio transmission from Lt. Beck to investigate a "suspicious vehicle" parked on Ellsworth Street near Cypress Street, in the City of Daytona Beach.

Upon approaching the vehicle Officer Szabo observed a female sitting in the passenger seat of the car. The car was lawfully parked. Upon inquiry the police officer determined that the defendant had been the driver of the car and as the defendant approached the vehicle, Officer Szabo said to the defendant, "Let me have your driver's license", whereupon the defendant produced a Michigan driver's license in the name of another person and which license had been suspended in the State of Michigan.

The defendant was thereupon arrested under Section 322.32(1) Florida Statutes which makes it a misdemeanor to be in possession of a suspended operator's or chauffer's license.

At the suppression hearing there was no evidence offered to indicate in what manner or why the automobile was a "suspicious vehicle" other than that it was in a high crime area at 1:30 a.m.

The State contends that the police officer had the right to ask the defendant for his driver's license under the "street encounter" theory.

In *State v. Smith*, 477 So.2d 658 (Fla. 5th DCA 1985), the Appellate Court noted that there are at least three levels of police/citizen encounters including, 1. The "street encounter" between police and citizens involving no coercion or detention and therefore not encompassed within the Fourth Amendment; 2. Brief seizures that must be supported by reasonable suspicion and; 3. Full scale arrest that must be supported by probable cause.

The last two situations can be summarily disposed of in this case because there was no arrest prior to the officers instructions to the defendant to furnish a driver's license and a car parked in a high crime area does not give an officer "founded" suspicion to legally detain a person for further investigation. (See *C.J.P. v. State*, 469 So.2d 826).

We are therefore left with the "street encounter" theory.

In *United States v. Thompson* (712 Fed (2) 356) Officer Arthur Kier noticed a black Pontiac automobile parked in the short term parking lot of the Jacksonville Airport. The dome light was illuminated and a

118

person inside. As Officer Kier approached the car he noticed that the driver, the defendant, Thompson had a light circular object held to his nose. Thompson moved the object down to his lap, screwed the lid on it and upon noticing Kier, moved the object quickly to his side. Kier knocked on the window and asked Thompson for identification. According to Kier's testimony, Thompson was free to ignore the request and drive away. Thompson however handed Kier his driver's license, which appeared to be valid.

As it turned out, the object that Thompson was seen holding by Kier contained cocaine whereupon Thompson was placed under arrest. A subsequent search of Thompson's vehicle uncovered various weapons, ammunition, hashish and a large sum of case.

In the *Thompson* case (supra) the Appellate Court stated that Fourth Amendment safeguards come into play where there is a "show of official authority such that a reasonable person would have believed he was not free to leave", citing *Royer v. U.S.*, 103 S. Ct. 1319.

In *Royer* (supra) law enforcement officers approached a man in an airport whom the officers believed fit a drug courier profile. The officers, upon request, obtained his driver's license and airline ticket.

Justice Brennan in a concurring opinion stated his view that the defendant was seized when the officers simply asked for and received his airline ticket and driver's license, his reasoning being that the retention of documents without which the defendant is unable to depart presents an even stronger case of investigative seizure.

In the *Thompson* case the Court stated:

"As in the airline ticket cases, the person whose driver's license has been retained can, in a physical sense, attempt to leave the scene. He can abandon his vehicle and walk away or attempt to drive away. As the airline ticket cases hold, however, the legal issue is whether a reasonable person would believe that law enforcement officers would permit him to leave. Contrasted with a person whose airline ticket has been retained, a person in a case whose license has been retained has less reason to expect that he will be permitted to leave. While a person may theoretically purchased another airline ticket and proceed on his way, a driver whose license has been retained may drive away only at the risk of arrest. Thus, the airline ticket cases reinforce, if not compel, our conclusion that a driver whose license has been retained would not reasonably believe himself free to leave."

In *Thompson* (supra) the court concluded:

**119**

"Thompson was seized in violation of the Constitution when Kier, without a reasonable suspicion of unlawful activity, retained Thompson's driver's license. The incriminating evidence subsequently obtained must be excluded as the fruit of an unlawful detention."

The present case is analogous to the *Thompson* cases. Once Officer Szabo retained Schley's driver's license he was no longer free to leave and the subsequent determination that the license was suspended in Michigan must be excluded as the fruit of an unlawful detention.

The cases cited by the State, to wit: *Burke v. State*, 465 So.2d 1337 and *Sommer v. State*, 465 So.2d 1339 are not controlling because in the *Burke* case (supra) all that the police officer did was to ask for identification and there was a specific finding by the Appellate Court that there was no evidence, appellant was not always free to leave and free to refuse the deputy's request. (See Page 133( and in *Sommer* (supra) the defendant was found to be in violation of a municipal ordinance at the time the police officers "checked out the subjects." (See Page 1339).

IT IS THEREFORE,

ORDERED AND ADJUDGED that the Motion to Suppress is hereby granted.

DONE, ORDERED AND ADJUDGED in Chambers at the County Courthouse Annex, 125 E. Orange Avenue, Daytona Beach, Volusia County, Florida this 21st day of April, 1987.